PATRICIA MEDVEY *v.* ROBERT E. MEDVEY
(AC 24142)

Dranginis, Bishop and West, Js.

Argued March 30—officially released June 29, 2004

*Andrew B. Nevas*, for the appellant (defendant).

*George J. Markley*, with whom, on the brief, was *Michael A. Meyers*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. In this marital dissolution action, the defendant, Robert E. Medvey, appeals from the trial court's postdissolution judgment holding him in contempt for his failure to pay alimony in accordance with the terms of the parties' dissolution judgment. On appeal, the defendant claims that the court improperly (1) premised its finding of contempt on an incorrect determination of his gross income for calendar year 2002, (2) found that he wilfully failed to comply with the alimony provision of the dissolution judgment and (3) awarded $7500 in counsel fees to the plaintiff. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the issues on appeal. The marriage of the parties was dissolved by judgment of the court on May 26, 1998. In its judgment, the court incorporated by reference a marital separation agreement between the parties dated May 26, 1998. The agreement provided, in part, that the defendant would pay the plaintiff a base amount of alimony of $25,000 a year in twenty-four equal installments. The agreement also required the defendant to pay the plaintiff, as addi-

tional alimony, a sum equal to one third of all "Line 7 income" in excess of $130,000. While the use of the term "Line 7" in the agreement was a specific reference to line seven of schedule C of the 1997 Internal Revenue Service form 1040, the parties' agreement included additional language reflecting their intent that "all of the [defendant's] earned income shall be subject to the [plaintiff's] alimony rights. . . ." The agreement defined "earned income" as "income paid to the [defendant] in consideration for goods, services or work performed or provided by him" and excluding "passive or investment income, awards, lottery earnings, gift, inheritance or other things of value received other than as compensation. . . ." Furthermore, it designated that, at the time, the defendant's "earned income" was derived from "transactional fees; advisory fees; referral fees; commissions in connection with his occupation as a registered representative and registered financial advisor; and other commissions or compensation for services rendered. . . ."

On November 21, 2002, the plaintiff filed a motion to hold the defendant in contempt for his alleged failure to pay alimony during 2002 in accordance with the terms of the marital dissolution judgment. Specifically, the plaintiff claimed that the defendant had failed to make the alimony payments required under the provision of the agreement that required the defendant to pay "additional alimony" pursuant to a formula related to his additional earned income. The defendant, in turn, filed a motion to modify the judgment, alleging that since the date of the marital dissolution, he had become a partner in a limited liability company and that he was no longer receiving income as a consultant. Specifically, the defendant alleged that income that once went directly to him was now being paid to the partnership, and the partnership, in turn, was paying all company expenses before remitting payment to the defendant.

Thus, the defendant claimed that although he had continued to perform the same types of services as before the marital dissolution, his actual earned income had diminished substantially by reason of the fact that payments that used to be made to him directly were now being made to his partnership and that some of those funds were now being utilized by the partnership for company expenses. The court, however, disagreed and, after an evidentiary hearing, found the defendant in contempt.

The essence of the court's finding was that the defendant's new arrangement did not substantially alter the amount of funds available to him and, therefore, he owed the plaintiff "additional alimony" in the amount of $67,887.95. Specifically, the court found that even though the defendant had become an employee of a new entity, he had received less funds from his employer only because he had directed the company from which he earned commissions to remit those commissions to his new employer and not to him personally. The court further found that those remittances were, in fact, payable to the defendant and were available to him, but for his contrary instructions that they be paid to his new employer. Thus, the court assigned to the defendant as income all sums credited to him, even though they were not actually received by him during the year. As a consequence, the court found the defendant in contempt and ordered him to pay the plaintiff the sum of $67,887.95. In addition, the court ordered the defendant to pay plaintiff's counsel the sum of $7500. This appeal followed.

We begin by articulating the appropriate standard of review. The defendant raises three claims on appeal. As to his first two claims regarding the court's determination of the amount of alimony due for 2002 and the court's finding of contempt, our review requires a two part inquiry. First, we must determine whether the

agreement entered into between the parties in conjunction with the dissolution of their marriage was clear and unambiguous. See *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000). If so, then the court's determination of the parties' intent was a legal and not a factual conclusion, and our review of that conclusion is plenary. Id. Second, if we find that the court accurately assessed the intent of the parties regarding the alimony provisions of their marital dissolution agreement, we must then decide whether the court correctly determined that the defendant wilfully had violated its terms.

As to the first question, it is familiar law that a marital dissolution agreement is a contract. Id. Thus, in reviewing it, we are guided by the law that the interpretation of a contract may either be a question of law or fact, depending on whether the language of the contract is clear and unambiguous. See *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). Here, the parties agree, as do we, that the language of the contract at hand is clear and unambiguous. Thus, the court's conclusions regarding the intent of the parties in making the contract required legal judgment. See *Amodio* v. *Amodio*, supra, 56 Conn. App. 470. Accordingly, they are subject to plenary review. See id.

As to the second question, barring any issues of jurisdiction or authority, "[w]e note that the abuse of discretion standard applies to the trial court's decision on [a] motion for contempt."[1] *Legnos* v. *Legnos*, 70 Conn. App.

---

[1] For the purpose of clarity, we note that "[c]ontempts of court may be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court. . . . The defendant's failure to comply with the [dissolution decree] is, therefore, an indirect contempt because it occurred outside the presence of the trial court.

"[A] finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Internal

349, 353 n.2, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002). If, however, the factual findings that the court relied on to conclude that the defendant was in contempt are attacked on appeal, we must review those findings under the clearly erroneous standard "[i]n addition to reviewing the propriety of the court's decision as a general matter . . . ." Id. With those principles in mind, we now turn to the merits of the defendant's first two claims.

I

The defendant first claims that the court's finding of contempt constituted an abuse of discretion because the court premised that finding on an incorrect determination of his gross income for calendar year 2002. We disagree.

As noted by the court in its thorough and comprehensive memorandum of decision, at the time of the marital dissolution, the defendant was employed as a broker and financial adviser by Commonwealth Equity Services and Investmark, Inc. (Commonwealth). Pursuant to the defendant's employment arrangement, Commonwealth received all payments for services rendered by the defendant. From that amount, Commonwealth deducted a fee of 10 percent for providing affiliation to the defendant as the broker-dealer under which he was a registered representative and remitted an additional 30 percent to Investment Financial Services, which paid for all of the defendant's office expenses. The remaining 60 percent of the payments was then disbursed to the defendant. The court found that in 2002, the defendant voluntarily left Commonwealth and joined The Breakwater Group (Breakwater). According to the court, under the terms of that new arrangement with Breakwater, the defendant received an annual base

quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 352, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).

salary of $75,000 and the first $165,000 of Breakwater's profits.

The court then found that although the defendant stopped receiving funds directly from Commonwealth after March, 2002, Commonwealth paid all funds due to him for the remainder of 2002 directly to Breakwater at his directive. The court also found that all of the funds paid by Commonwealth either directly to the defendant or to Breakwater pursuant to his directions represented commissions earned by the defendant. Those funds totaled $345,561.

On the basis of that finding, the court concluded that in 2002, the plaintiff should have received as alimony the sum of $71,883.95 in addition to the base sum of $25,000. Finding that the plaintiff had received only the additional sum of $3996, the court concluded that the sum of $67,887.95 was due to the plaintiff for the calendar year 2002.

The defendant contends that the court improperly included in its "additional alimony" computation the funds paid by Commonwealth to Breakwater. He posits that that computation was to be based on his net income rather than on Breakwater's gross income and that as such, he netted only $138,641.50 in income in 2002. Thus, the defendant argues that he did not violate the dissolution judgment because he was obligated to pay the plaintiff only approximately $2900 in "additional alimony." We are unpersuaded.

The purpose of the supplemental alimony provision in the parties' agreement was to provide the plaintiff with a fixed percentage of the income the defendant earned in excess of the base figure of $130,000. The court found that the sums paid by Commonwealth to Breakwater constituted income paid to the defendant in 2002 that was, therefore, to be included in the "additional alimony" computation. Our review of the record

comports with that finding. Thus, the court's finding was not clearly erroneous.

Because we believe that the court accurately determined the amount of income the defendant received in 2002, we further conclude that the court's determination regarding the sum due and owing the plaintiff was not clearly erroneous. Given the propriety of the court's underlying factual findings, the defendant's claim that the court's judgment of contempt constituted an abuse of discretion must fail.

## II

The defendant also challenges the court's judgment of contempt by alleging that the court improperly found that he wilfully failed to comply with the dissolution agreement. We disagree.

The court's memorandum of decision reflects the court's understanding that a finding of contempt presupposes a determination of wilful noncompliance with the court's order. Having determined the proper legal premise, the court found that the defendant fully understood the extent of his alimony obligation and that his failure to pay in accordance with the terms of the marital dissolution judgment was wilful. Because that finding is supported by the record, we conclude that the court's finding of contempt did not constitute an abuse of discretion. Accordingly, that claim fails.

## III

The defendant's final claim is that the court abused its discretion when it ordered him to pay the plaintiff's counsel fees in the amount of $7500. Specifically, he argues that the award (1) is inequitable because his financial affidavit does not reflect an ability to pay it and (2) lacked evidentiary support.[2] We disagree.

---

[2] The defendant also argues that because the court's underlying finding of contempt was improper, the court abused its discretion in awarding the plaintiff $7500 in counsel fees. Because we affirm the court's finding of contempt, we need not separately address that argument.

At the outset, we set forth the legal principles that guide our review. General Statutes § 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court entered under section . . . 46b-81 to 46b-83, inclusive . . . the court may award to the petitioner a reasonable attorney's fee . . . ." On appeal, we review the court's order for abuse of discretion. *Bowers* v. *Bowers*, 61 Conn. App. 75, 81–82, 762 A.2d 515 (2000), appeal dismissed, 258 Conn. 710, 784 A.2d 889 (2001).

## A

The defendant first posits that because his financial affidavit did not reflect an ability to pay the attorney's fees sought by the plaintiff, the court abused its discretion in awarding such fees. It is, however, well settled that pursuant to § 46b-87, the court has the authority to impose attorney's fees as a sanction for noncompliance with a court's dissolution judgment and that "*that sanction may be imposed without balancing the parties' respective financial abilities.*" (Emphasis added.) *Dobozy* v. *Dobozy*, 241 Conn. 490, 499, 697 A.2d 1117 (1997). As such, the defendant's contention is without merit.

## B

The defendant also argues that the court's award of counsel fees lacked evidentiary support. The record, however, belies this claim.

Our review of the record reveals that the defendant testified that he had paid more than $13,000 in fees in conjunction with the proceedings, and the plaintiff testified that she had already paid her counsel the sum of $7500 in fees in conjunction with this postdissolution dispute. Additionally, the record discloses that the court, in making the award, was aware of the nature and extent of the efforts of the plaintiff's counsel in

prosecuting the motion for contempt. Accordingly, we conclude that the court did not lack a sufficient evidentiary basis from which to determine an appropriate amount of fees to award. Because the court did not abuse its discretion, the defendant's final claim must also fail.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

[3] In making that determination, we are mindful of our Supreme Court's recent decision in *Smith* v. *Snyder*, 267 Conn. 456, 839 A.2d 589 (2004), concerning counsel fees generally in which the court held that in order to secure an order for counsel fees, a party must submit more than a mere demand to the court and that a party seeking counsel fees cannot rely solely on the court's general knowledge of the reasonable range of legal fees in fashioning the award of counsel fees. We believe, however, that this case is distinguishable from *Smith* because here, unlike in *Smith*, the plaintiff's financial affidavit revealed that she had actually incurred legal fees in the amount requested, and that amount was slightly more than half the amount already paid by the defendant to his counsel for representation in the same matter. Those facts, coupled with the court's own participation in this matter, gave it a reasonable basis for determining an appropriate award of counsel fees in this proceeding as a sanction for the defendant's contempt.