PATRICIA MEDVEY *v.* ROBERT E. MEDVEY
(AC 26234)

Flynn, C. J., and DiPentima and Foti, Js.

Argued May 24—officially released October 31, 2006

*Gerald H. Kahn*, for the appellant (defendant).

*George J. Markley*, with whom, on the brief, was *Michael A. Meyers*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant, Robert E. Medvey, appeals from the trial court's judgment modifying the parties' financial orders and holding him in contempt for his failure to pay alimony in accordance with the terms of the parties' dissolution judgment. On appeal, the defendant claims that the court abused its discretion when it (1) relied on his gross income rather than his net income in modifying the alimony order, (2) awarded the plaintiff, Patricia Medvey, attorney's fees and (3) awarded the plaintiff expert witness fees.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The marriage of the parties was dissolved by judgment of the court on May 26, 1998. A stipulated financial agreement (agreement)

[1] The attorney's fees and expert witness fees were awarded in conjunction with a motion for contempt filed by the plaintiff.

addressing alimony payment to the plaintiff was incorporated into the dissolution judgment. Pursuant to that agreement, the defendant was to pay the plaintiff base alimony in the amount of $25,000 a year in twenty-four equal installments. In addition to the base alimony, the defendant also was required to pay the plaintiff as "additional alimony" a sum equal to one third of all "Line 7 income" in excess of $130,000, which was a specific reference to line seven of schedule C of the defendant's 1997 Internal Revenue Service form 1040. The agreement contained language reflecting the parties intent that "all of the [defendant's] earned income shall be subject to the [plaintiff's] alimony rights." Earned income was defined in the agreement as "income paid to the [defendant] in consideration for goods, services or work performed or provided by him."

The defendant adhered to the payment schedule set forth in the agreement with regard to base alimony and additional alimony from 1998 through 2001. In January, 2002, the defendant discontinued making payments for additional alimony.[2] Thereafter, both parties presented a series of motions addressing alimony, including a motion filed by the plaintiff on November 21, 2002, to hold the defendant in contempt for his alleged failure to pay additional alimony in 2002 pursuant to the agreement. On March 3, 2003, the court, *Hon. Edgar W. Bassick III*, judge trial referee, ruled on the contempt motion, and found the defendant in contempt and awarded the plaintiff additional alimony in the amount of $67,887.95. The court also awarded attorney's fees to be paid to the plaintiff in the amount of $7500.[3]

On August 18, 2004, the plaintiff filed a motion for contempt relating to the defendant's alleged failure to

[2] The defendant told the plaintiff that due to a change in his professional affiliations, he was unable to make payments for additional alimony.

[3] The defendant subsequently appealed from the court's judgment, which was upheld by this court in *Medvey* v. *Medvey*, 83 Conn. App. 567, 850 A.2d 1092 (2004).

comply with the court's March 3, 2003 order. On August 24, 2004, the defendant filed another motion for modification with respect to alimony. By memorandum of decision filed November 18, 2004, the court, *Hon. Howard T. Owens*, judge trial referee, ruled on the outstanding motions for modification submitted by both parties and the plaintiff's motion for contempt. In that ruling, the court modified the dissolution judgment with respect to alimony and found the defendant in contempt, awarding the plaintiff $4500 for attorney's fees and $5000 for expert witness fees. This appeal followed. Additional facts will be set forth as necessary to resolve the issues presented.

As a preliminary matter, we set forth our standard of review. "An appellate court will not disturb a trial court's orders [financial or otherwise] in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . We apply that standard of review because it reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Citation omitted; internal quotation marks omitted.) *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 132, 869 A.2d 164 (2005). With these principles in mind, we now turn to the defendant's specific claims.

I

The defendant's first claim on appeal is that the court improperly relied on his gross income rather than his

net income when modifying the dissolution judgment with respect to alimony. Specifically, the defendant claims that because the court referred only to gross income and did not mention net income in its memorandum of decision, its order was based solely on gross income and was therefore improper. We disagree.

In his memorandum of decision, Judge Owens found a substantial change in circumstances "warranting a modification of the alimony formula set up in the stipulation of the parties at the time of the dissolution" and then made the following order: "The defendant shall pay to the plaintiff 18 percent of all of the defendant's gross income from all sources for the calendar years 2003 and 2004 and thereafter. This flat percent will simplify the determination of the amount of alimony due."[4]

As this court most recently has restated, "[i]t is well settled that a court must base its child support and alimony orders on the available net income of the parties, not gross income. *Collette* v. *Collette*, 177 Conn. 465, 469, 418 A.2d 891 (1979). Whether an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific." *Hughes* v. *Hughes*, 95 Conn. App. 200, 204, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006).

In *Hughes*, we acknowledged that "an order need not affirmatively or expressly state that the court is relying solely on gross income for that order to be improper,

---

[4] We note that in its memorandum of decision, the court made reference to the defendant's retaining 88 percent of his gross income, thus giving the plaintiff 18 percent. That mistaken percentage subsequently was corrected at a hearing on January 10, 2005, to reflect properly the defendant's retaining 82 percent of his gross income.

we are similarly of the opinion that a trial court need not expressly state that it has considered the appropriate factors in reaching its decision. According the court every reasonable presumption in favor of the correctness of its decision, we assume that the court considered the appropriate statutory and evidentiary underpinnings in fashioning its financial orders." Id., 208. Adhering to that principle in *Hughes*, we inferred that when the court did not specifically state that it was fashioning its financial orders on the basis of its consideration of net income but had before it ample evidence of the parties' net income, "the court considered the relevant statutory factors and all of the evidence submitted by the parties." Id.

In this case, Judge Owens had before him financial affidavits and relevant tax returns from both parties. That documentary evidence, coupled with the testimony presented by the plaintiff's expert, Richard Finkel, a forensic accountant, adequately apprised the court of the defendant's financial status. Referring to the recent order and findings of Judge Bassick, the court noted that "the defendant's new employment arrangement did not substantially alter the amount of funds available to him . . . . [T]he defendant received fewer funds only because he had directed the company from which he earned commission to remit the commission to his new employer rather than to him personally. . . . [T]hese funds were available to the defendant and would have gone directly to him if he had not instructed the company to pay his new employer." On the basis of our review of the evidence submitted to the court by the parties, we infer that the court was aware of both the gross and net incomes of the defendant and fashioned its financial order on the basis of that evidence. Although the court's modification order directs the defendant to pay 18 percent of his "gross income," it qualified that directive by stating that the "flat percent

will simplify the determination of the amount of alimony due." Upon review of the record, we note that the defendant essentially was requesting the court to modify the alimony formula, which he now challenges on appeal. As set forth in the parties' original agreement at the time of dissolution, that formula provided for additional alimony payments based on a percentage of "any amounts of income in excess of $130,000 . . . ."[5]

In light of the evidence presented and the findings of the court, we cannot conclude that the court based its order on the plaintiff's gross income. Rather, we conclude that its order was a function of gross income. By "function of gross income," we mean that the court used gross income to calculate its orders, which is distinguishable from the court basing its order on gross income. Cf. *Morris* v. *Morris*, 262 Conn. 299, 306–307, 811 A.2d 1283 (2003) ("trial court affirmatively and expressly stated that it relied on gross incomes in determining support"); see also *Greco* v. *Greco*, 82 Conn. App. 768, 773, 847 A.2d 1017 (2004) ("court ordered the defendant to pay alimony and other expenses that far exceeded his available net income"), aff'd, 275 Conn. 348, 880 A.2d 872 (2005); *Ludgin* v. *McGowan*, 64 Conn. App. 355, 358, 780 A.2d 198 (2001) ("[i]n its memorandum of decision, the court repeatedly referred to and compared the parties' gross incomes"). As this court emphasized in *Hughes*, "the fact that the alimony and support order was ultimately a function of gross income does not, alone, stand for the proposition that the order was based on gross income. . . . [W]e differentiate between an order that is a function of gross income and one that is based on gross income." *Hughes* v. *Hughes*, supra, 95 Conn. App. 207. As in *Hughes*, we are not persuaded in the present case that the court

[5] As stated previously, pursuant to the parties' original agreement, all of the defendant's earned income was subject to the plaintiff's alimony rights.

abused its discretion when it modified the alimony formula in the dissolution judgment.

## II

The defendant's next claim on appeal is that the court abused its discretion when it awarded attorney's fees to the plaintiff in the amount of $4500. Specifically, the defendant argues that the amount awarded for attorney's fees was not reasonable, as it was comprised of fees that were incurred prior to the plaintiff's filing a motion for contempt on August 18, 2004. We are not persuaded.

In dissolution proceedings, General Statutes § 46b-87 permits the trial court to order attorney's fees after a finding of contempt.[6] Section 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court entered under section . . . 46b-81 to 46b-83, inclusive . . . the court may award to the petitioner a reasonable attorney's fee . . . ." As stated previously, on appeal, we review the court's order for abuse of discretion. *Medvey* v. *Medvey*, 83 Conn. App. 567, 575, 850 A.2d 1092 (2004).

The defendant does not dispute the court's awarding of attorney's fees, but rather questions the reasonableness of those fees. He claims that the award of attorney's fees should be determined solely with reference to the amount of time the attorney actually spent working on the contempt motion and that any fees incurred prior to the filing of the motion for contempt should not be included in the determination of a reasonable attorney's

---

[6] For clarification, we note that "[a]lthough the award of attorney's fees pursuant to [General Statutes] § 46b-62 is appropriate when a complaining party has brought an unsuccessful contempt action, where contempt is established, the concomitant award of attorney's fees properly is awarded pursuant to § 46b-87 and is restricted to efforts related to the contempt action." *Esposito* v. *Esposito*, 71 Conn. App. 744, 749, 804 A.2d 846 (2002).

fee. As we previously have stated, "[i]t is axiomatic, however, that the determination of reasonableness of attorney's fees appropriately takes into consideration a range of factors, among which the time and labor expended is but one consideration." *Esposito* v. *Esposito*, 71 Conn. App. 744, 749, 804 A.2d 846 (2002). Moreover, "because the award of attorney's fees pursuant to § 46b-87 is punitive, rather than compensatory, the court properly may consider the defendant's behavior as an additional factor in determining both the necessity of awarding attorney's fees and the proper amount of any award." Id., 750.

In seeking to enforce the postjudgment order dated March 3, 2003, which ultimately led to the plaintiff's need to file a motion for contempt, she incurred attorney's fees well in excess of $4500. Those fees represented numerous efforts by the plaintiff's attorney to enforce the postjudgment order and included work performed on the contempt motion.[7] "It [is] within the discretion of the court to determine whether the effort expended was reasonable under the circumstances and to rely on its familiarity and expertise with the complex legal issues involved to determine the reasonableness of the attorney's fees." *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 596, 823 A.2d 1274 (2003). We cannot conclude in the present case that the court abused its discretion in awarding the plaintiff a portion of the legal fees that she incurred in attempting to recover on the court's postjudgment order. Accordingly, we reject the defendant's second claim.

---

[7] The defendant's argument that the attorney's fees are unreasonable because they reflect work performed prior to the plaintiff's filing the motion for contempt is unavailing, and his reliance on *Miller* v. *Miller*, 16 Conn. App. 412, 547 A.2d 922, cert. denied, 209 Conn. 823, 552 A.2d 430 (1988), is misplaced. Unlike *Miller*, in which the award of attorney's fees was in conjunction with an appeal, the plaintiff in the present case was awarded fees as authorized by § 46b-87, which has a punitive component. We also note that in the present case, the fees awarded were substantially less than those actually incurred.

III

The defendant's final claim on appeal is that the court abused its discretion when it awarded the plaintiff expert witness fees. Specifically, the defendant claims that the court failed to consider the financial ability of both parties when it awarded $5000 in expert witness fees to the plaintiff. We are not persuaded.

General Statutes § 46b-62[8] vests in the trial court the discretion to award attorney's fees in dissolution proceedings. Our Supreme Court has included within the definition of attorney's fees allowable under § 46b-62 certain costs of litigation, including expert witness fees. See *Eslami* v. *Eslami*, 218 Conn. 801, 819–21, 591 A.2d 411 (1991). The criteria to be considered in determining such an award include "the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [§] 46b-81 . . . . " General Statutes § 46b-82 (a). We note that "[i]n making an award of attorney's fees under § 46b-82, [t]he court is not obligated to make express findings on each of these statutory criteria." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 693, 830 A.2d 193 (2003). Moreover, in divorce cases, it is not uncommon for the court to award attorney's fees regardless of the parties' ability to pay their own fees when the failure to award such fees would undermine prior financial orders. Id., 694. We review the court's

_____

[8] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

awarding of attorney's fees under the abuse of discretion standard. The ultimate issue in our review, therefore, is whether the court reasonably could have concluded as it did. Id.

In the present case, the record supports a finding that the plaintiff had minimal income, was without any substantial liquid assets and was attempting to collect unpaid alimony from a prior order. As stated previously, there also is ample evidence in the record demonstrating the defendant's financial status. On the basis of those considerations, it was reasonable for the court to have determined that expert witness fees for $5000 should be allowed. Accordingly, we cannot conclude that the court abused its discretion when awarding the plaintiff expert witness fees.

The judgment is affirmed.

In this opinion the other judges concurred.