CARA L. ALLEN *v.* ALFRED H. ALLEN, JR.
(AC 31310)

Gruendel, Bear and Dupont, Js.

Argued September 19, 2011—officially released April 3, 2012

*Erich Henry Gaston,* with whom, on the brief, was *Margot Kenefick-Burkle,* for the appellant (plaintiff).

*Richard W. Callahan,* for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Cara L. Allen, appeals from the postdissolution judgment of the trial court denying her motions for contempt, denying her motions to reconsider, staying proceedings on her motion to reopen pending resolution of this appeal, and granting the motion of the defendant, Alfred H. Allen, Jr., for contempt. The plaintiff claims that the court erred in (1) finding her in contempt and failing to find the defendant in contempt, (2) fashioning an improper offset in favor of the defendant against his unallocated support obligation, (3) awarding the defendant attorney's fees and (4) failing to reconsider or reopen its judgment. We reverse in part and affirm in part the judgment of the trial court.

The record reveals the following facts and procedural history. The parties were married on April 27, 1996, and the marriage produced three children. In a complaint dated June 30, 2006, the plaintiff requested dissolution of the marriage on the ground that it had broken down irretrievably. On March 3, 2008, the court dissolved the parties' marriage, and the dissolution decree incorporated the terms of a separation agreement drafted by the parties (agreement). The agreement provided, inter alia, that the defendant would pay a lump sum property settlement to the plaintiff in the amount of $180,000, and, in exchange, he would own his business, A & A Enterprises, free and clear of any claim by the plaintiff. In addition, the agreement provided for unallocated alimony and support payments to the plaintiff and the

children in the amount of $777 per week for a period of five years. The agreement further provided for disposition of the marital residence, which was encumbered by a mortgage and Internal Revenue Service (IRS) liens; the defendant would quitclaim his interest in the residence to the plaintiff and title would be held in escrow until the defendant was able to release or "subrogate" the IRS liens on the marital residence. Once the IRS liens had been paid or subrogated, the plaintiff would refinance the mortgage on the marital residence, releasing the defendant from liability thereunder within ninety days. The agreement provided that in the event the plaintiff was unable to refinance the marital residence, she would list the residence for sale. The agreement also provided that the plaintiff would be responsible for all expenses associated with the marital residence as of the date she received the $180,000 property settlement. The terms of the agreement were incorporated by reference into the dissolution judgment.

On November 20, 2008, the plaintiff filed a motion for contempt, alleging that the defendant had failed to pay alimony and child support.[1] On January 8, 2009, the defendant filed a motion for contempt, alleging, inter alia, that the plaintiff had failed to comply with terms of the agreement by (1) failing to cooperate in subrogation of the IRS liens, (2) failing to make payments on expenses associated with the marital residence, (3) failing to refinance the mortgage within ninety days once the IRS had stated a willingness to subrogate to the new mortgage and (4) failing to list the residence for sale once she had made clear through her conduct that she did not intend either to refinance the existing mortgage or to occupy the marital residence. The court heard argument on the motions for contempt and, on June

[1] On November 26, 2008, the plaintiff filed a second motion for contempt, alleging that the defendant had failed to pay unreimbursed medical expenses. That motion is not a subject of this appeal.

17, 2009, issued a memorandum of decision in which it granted the defendant's motion and denied the plaintiff's motions.[2] On July 7, 2009, the plaintiff filed a consolidated motion "for reconsideration, reargument, articulation and to re-open evidence," and, on July 13, 2009, the court denied that motion. This appeal followed.[3] After this appeal was filed, on October 12, 2009, the plaintiff filed another motion in the trial court to open the judgment, and on March 26, 2010, the court deferred proceedings on that motion until after our resolution of this appeal. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the trial court erred in: (1) resolving the parties' competing contempt motions by (a) finding her in contempt for her failure to refinance or sell the marital residence, (b) finding her in contempt for her failure to pay expenses associated with the marital residence, (c) finding her in contempt for her disposition of the lump sum property settlement and (d) failing to find the defendant in contempt; (2) fashioning a $52,000 credit in favor of the defendant against his support arrearage and continuing support obligation; (3) awarding the defendant attorney's fees; and (4) improperly (a) denying the plaintiff's motion for articulation, reargument and reconsideration, and (b) refusing to reopen the judgment. We address the plaintiff's claims in turn.

Our standard of review in domestic relations matters is well established. "An appellate court will not disturb

[2] In addition to the motions for contempt, the court, in its memorandum of decision, also addressed the defendant's motion for modification of parenting access. That motion, however, is not before this court on appeal.

[3] On January 5, 2010, while this appeal was pending, the plaintiff filed a motion for articulation with respect to the basis for the trial court's award of a $52,000 credit to the defendant in its June 17, 2009 decision on the motions for contempt. The motion was denied by the trial court. On March 5, 2010, the plaintiff filed a motion for review with this court. On April 21, 2010, we granted the motion for review but denied the relief requested therein.

a trial court's orders [financial or otherwise] in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . We apply that standard of review because it reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Medvey* v. *Medvey*, 98 Conn. App. 278, 281, 908 A.2d 1119 (2006).

I

## CONTEMPT FINDINGS

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

A

The plaintiff first claims that the trial court erred in holding her in contempt for failing to refinance or sell

the marital residence. The plaintiff argues that the trial court misinterpreted the terms of the agreement regarding her responsibilities in relation to the marital residence. Specifically, the plaintiff contends that the use of the term "subrogate" in paragraph 3.1 b of the agreement[4] is ambiguous and fails to clarify her responsibilities regarding the refinancing or sale of the marital

---

[4] Paragraph 3.1 of the agreement provides: "Real property shall be distributed as follows:

"a. The [plaintiff] shall own free and clear from any claim by the [defendant] the marital residence known as 210 Beaver Head Road, Guilford, CT. [The defendant] shall Quit Claim his interest to the [plaintiff] within 14 days of the date of dissolution. Said title shall be held in escrow until the IRS lien is released or subrogated. The [defendant] shall be current on all [p]endente [l]ite orders through the payment of the $180,000 lump sum property settlement set forth herein.

"b. [The plaintiff] shall be responsible to pay all bills associated with the marital residence that are received and due after the payment of the $180,000 lump sum property settlement, regardless of whether the service was for a period that preceded the payment. The marital residence is encumbered by IRS liens which the [defendant] shall be responsible to obtain their release from title or an agreement from the IRS to subrogate to allow the refinance. [The defendant] shall also be responsible to cure any other liens of record clouding title to the marital residence, except the mortgage lien. Once the IRS liens [are] released or there is an agreement to subrogate, and any other liens that may exist are released, [the plaintiff] shall refinance all mortgage liens on the marital residence to remove the [defendant] from liability thereunder within 90 days of the IRS liens being cured (either released or agreement to subrogate) and her receiving her cash property settlement for her equitable interest in the [defendant's] business set forth herein. In the event the [plaintiff] cannot refinance the house within the time set forth herein, then the house shall be listed for sale and the first reasonable offer shall be accepted. The parties agree that the court shall retain jurisdiction to monitor the refinance and/or sale of the marital residence. Upon the event of the sale of the residence, the [plaintiff] shall retain the net sale proceeds or be responsible for any net loss.

"c. [The defendant] shall install a new septic system at the marital residence, at his sole expense, within 30 days from the date of dissolution. The work shall be completed in accordance with all housing and safety codes for a three bedroom house. [The defendant] shall be responsible for any and all permits needed for the work. Upon completion of said work, all debris will be removed, the land shall be graded and seeded and left in a 'like new' condition.

"d. During the pendency of this action, the [defendant's] grandfather transferred 1073 Durham Road, Guilford, CT to Christine Mulvey, a significant other of the [defendant]. The [plaintiff] waives any claims, legal or equitable, she had or may have had to claim any interest in said property."

residence.[5] The defendant contends that the use of the term "subrogate" was a scrivener's error and that the parties knew that the term meant "subordinate."

"It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is to be regarded and construed as a contract. . . . Accordingly, our review of a trial court's interpretation of a separation agreement is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 354–55, 999 A.2d 713 (2010).

Our review of the agreement convinces us that the term "subrogate" was used in error. "Subrogate" has a specific legal meaning that does not comport with the terms and intent of the present agreement as a whole.[6] Accordingly, we conclude, as did the trial court, that

---

[5] In her brief, the plaintiff claims that there is a significant ambiguity in paragraph 3.1 of the agreement because of the use of the word "subrogate." She asserts that even if "subrogate" was mistakenly used in place of "subordinate," "either word does not make clear to the [p]laintiff what her obligations were in terms of the refinance of the [m]arital [r]esidence and IRS liens . . . ."

[6] "Subrogate" is defined: "To substitute (a person) for another regarding a legal right or claim." Black's Law Dictionary (9th Ed. 2009). "Subordinate," in contrast, is defined: "To place in a lower rank, class, or position; to assign a lower priority to." Id.

the term "subrogate" in the context of the present agreement mistakenly was used instead of "subordinate."[7] Cf. *Shawmut Bank Connecticut, N.A.* v. *Connecticut Limousine Service, Inc.*, 40 Conn. App. 268, 274, 670 A.2d 880 ("[i]f the word in question appears to be an error, the trial court may, by looking at the contract as a whole, interpret the word so it is more logically suited to the agreement" [internal quotation marks omitted]), cert. denied, 236 Conn. 915, 673 A.2d 1143 (1996).

The plaintiff further argues that the agreement, properly construed, establishes that either the payment or subrogation of the IRS liens encumbering the marital residence was a condition precedent to her obligation to sell or refinance the residence. The plaintiff contends that there was no evidence supporting the court's determination that her obligation to sell or refinance was triggered. We disagree.

In its recitation of evidence, the court noted that the defendant entered letters into evidence indicating a commitment by the IRS to subordinate its liens. Although the plaintiff argues that the defendant never provided a definitive, written agreement from the IRS, the language of the agreement requires merely an

---

[7] Although the trial court did not explicitly determine that the term "subrogate" was used erroneously, we infer this conclusion from the result reached by the court. See *Evans* v. *General Motors Corp.*, 277 Conn. 496, 508, 893 A.2d 371 (2006) (court's ruling on particular issue can be inferred through substantive effect of court's orders and memorandum of decision). For example, the court stated in its memorandum of decision: "The defendant argues that he worked diligently to have the lien subrogated, so that the plaintiff would be able to refinance. He introduced several letters into evidence which indicate that he had a commitment of the IRS to subrogate the lien, and provided the plaintiff with the name of a loan officer who was willing to 'take and process [the plaintiff's] application to refinance and that lenders will close with a subordination because the IRS lien will not affect the lender's position.' " Furthermore, the memorandum provides that the court found the plaintiff in contempt, in part, for failing "to cooperate in the subordination of the IRS liens . . . ."

"agreement to subrogate," which, consistent with our interpretation of the agreement, we construe as an "agreement to subordinate . . . ."[8] The record supports the court's finding of contempt, as there is sufficient evidence that the IRS agreed to subordinate its liens.

Furthermore, there is evidence in the record, including the plaintiff's own testimony, that she initially believed that she could refinance the existing mortgage on the residence but thereafter changed her mind about whether she would be able to do so. After she determined that she could not refinance the mortgage, she took no action as required by the agreement to list the property for sale.[9] Accordingly, the record supports the court's finding that the plaintiff "failed to list the property at 210 Beaver Head Road, Guilford, Connecticut, for sale within a reasonable time after she allegedly believed she was unable to refinance the mortgage . . . ."

Finally, the plaintiff contends that, pursuant to the agreement, the defendant was obligated to release other liens of record on the marital residence before any obligation on her part to refinance or sell was triggered. We conclude that the record is not adequate to address this portion of the plaintiff's claim.

Our review of the transcript and memorandum of decision reveals that the court made no findings about

---

[8] It is undisputed that the defendant paid the $180,000 property settlement to the plaintiff.

[9] Specifically, the following colloquy took place between the plaintiff and her counsel:

"Q. Did you believe at the time of the dissolution that you might be able to refinance the mortgage?

"A. Yeah.

"Q. Okay. Did you find out subsequent to the dissolution that you were unable to refinance the mortgage?

"A. Sss—yes."

the alleged "other liens," including but not limited to whether any of them were filed on the land records. After she appealed, the plaintiff did not take any action to obtain findings of fact and conclusions of law by the court about such alleged liens.

"[B]ecause the defendant failed to present an adequate record for review, [w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . ." (Citation omitted; internal quotation marks omitted.) *McCarthy* v. *Cadlerock Properties Joint Venture, L.P.*, 132 Conn. App. 110, 118, 30 A.3d 753 (2011).

Accordingly, we cannot conclude that the court abused its discretion in finding the plaintiff in contempt for her failure to make any meaningful effort to refinance or sell the marital residence.

B

The plaintiff next claims that the court erred in finding her in contempt for failing to pay expenses associated with the marital residence. The plaintiff argues that, even if she did violate the court's order relating to the payment of expenses, the court improperly imposed a penalty of $52,000 for her nonpayment. We agree that the trial court improperly concluded that the defendant should be credited with the sum of $52,000 in the manner provided by the court.

The plaintiff testified that she violated the court's order with regard to payment of marital residence

expenses.[10] The court's finding of contempt on this ground is supported by the record. Accordingly, we affirm the trial court's finding of contempt as to nonpayment of marital residence expenses. The plaintiff's argument regarding the court's imposition of the $52,000 "penalty" will be discussed in part II of this opinion.

## C

The plaintiff further claims that the court erred in finding her in contempt due to her disposition of the lump sum property settlement. The following additional facts are relevant to the resolution of this claim. In its memorandum of decision, the court stated: "The court finds that the plaintiff made no serious attempt to refinance the mortgage. After her claims that she made these attempts and was told that she would not be able to refinance, she did not list the property for sale within the time period provided in the agreement, but instead she took the $180,000 given to her by the defendant, [which was to pay down the existing mortgage] began house shopping with her boyfriend . . . and . . . proceeded to give $150,000 to him.[11] [Her boyfriend] used this money to purchase a $624,000 home and did not put the plaintiff on the title. [The plaintiff] also failed

---

[10] The following colloquy between the defendant's counsel and the plaintiff took place at the contempt hearing:

"Q. You had money available to you that could allow you to comply with the court's orders [with regard to payment of the mortgage].

"A. Yes.

"Q. Okay; but you chose not to.

"A. Yes."

[11] To the extent that the court found that the $180,000 settlement was to be applied toward payment of the marital residence's expenses, we determine that such finding is clearly erroneous as the agreement provides only that the $180,000 was to be paid as compensation for the plaintiff's interest in the defendant's business. Any evidence in the record to the contrary is parol. See *Benvenuti Oil Co.* v. *Foss Consultants, Inc.*, 64 Conn. App. 723, 727, 781 A.2d 435 (2001) ("[t]he parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract" [internal quotation marks omitted]).

to make any of the monthly mortgage payments on the marital residence, beginning with the first month she was obligated to do so. She explained that if she had paid the mortgage, she would not have any money left. As a result, the mortgage went into foreclosure, and a foreclosure sale took place several weeks before this hearing, with a debt of $416,000, excluding attorney's fees and costs. The plaintiff's conduct not only caused the house to go into foreclosure, but it also caused the defendant's business to be destroyed—both of which had been built up by years of his hard labor."

The plaintiff argues that the agreement contains no provision providing for a particular disposition of the $180,000 settlement. Moreover, the plaintiff argues that the trial court improperly allowed the defendant to testify, over objection, as to the purpose of the lump sum payment. We disagree that the court erred in finding the plaintiff in contempt.

In finding the plaintiff in contempt, the court stated that "the plaintiff wilfully violated the court's orders in that she . . . failed to make payment on all expenses associated with the marital residence after she received the payment of the $180,000 . . . ." Paragraph 3.1 b of the agreement states that the plaintiff "shall be responsible to pay all bills associated with the marital residence that are received and due *after the payment of the $180,000* lump sum property settlement . . . ." (Emphasis added.) Based on our reading of the memorandum of decision and the agreement, we determine that the court's finding of contempt was not predicated on disposition of the $180,000 property settlement; rather, it was premised on the plaintiff's failure to pay expenses associated with the marital residence once her obligation to do so had been triggered by transfer of the property settlement. As noted previously, we affirm the trial court's finding on this ground.

## D

In addition, the plaintiff claims that the court erred in failing to find the defendant in contempt for failure to make payments in accordance with his support obligation. The plaintiff argues that the trial court's finding that the defendant was not wilful in failing to pay his nonmodifiable support obligation is not supported by the record. We are not persuaded.

"To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact." (Internal quotation marks omitted.) *Gil* v. *Gil*, 94 Conn. App. 306, 311, 892 A.2d 318 (2006). "[It] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, 96 Conn. App. 75, 82, 899 A.2d 76, cert. denied, 280 Conn. 907, 907 A.2d 89 (2006).

The court found that the defendant's failure to make support payments resulted from "an inability to make the payments as ordered due to his employment history." Moreover, at the time of its decision, the court found the defendant in arrears on his support payments in the amount of $26,964. Our review of the record supports the court's finding. Evidence was adduced regarding the effects of the poor economy on the defendant's employment prospects and his troubled financial situation. We conclude that the trial court did not abuse its discretion in finding that the defendant was not in contempt. Accordingly, the court's denial of the plaintiff's motion for contempt is affirmed.

## II

## SANCTIONS

On appeal, the plaintiff claims that the court improperly determined that she was unjustly enriched by her disposition of the property settlement and failure to pay the expenses associated with the marital residence. The plaintiff argues that her disposition of the property settlement cannot give rise to a claim for unjust enrichment because the agreement does not require a particular disposition of the settlement funds. Furthermore, the plaintiff argues that, by fashioning relief in the form of a $52,000 credit against the defendant's support arrearage and obligations, the court improperly modified a nonmodifiable support order and imposed a punitive sanction. We agree with the plaintiff that the court erred in its determination of sanctions.

As noted in part I C of this opinion, we determine that the court did not find the plaintiff in contempt for her disposition of the property settlement. To the contrary, the court determined that the plaintiff had been unjustly enriched by failing to pay the expenses attributable to the marital residence when her obligation to do so was triggered by the transfer of the $180,000 property settlement. The court thus determined that the plaintiff had been unjustly enriched in an amount equal to the monthly expenses of the marital residence, $4000, multiplied by the thirteen months that had accrued from payment of the property settlement until the date of foreclosure on the marital residence. The court found that this amount equaled $52,000. The court then applied this amount, along with attorney's fees totaling $14,408, as a "credit" against the defendant's support obligation.

In a civil contempt proceeding, judicial sanctions are generally either compensatory or coercive; *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 278–80,

471 A.2d 638 (1984); and unjust enrichment is a form of compensatory relief. *Culver* v. *Culver*, 127 Conn. App. 236, 250–51, 17 A.3d 1048, cert. denied, 301 Conn. 929, 23 A.3d 724 (2011); *Breen* v. *Judge*, 124 Conn. App. 147, 158–59, 4 A.3d 326 (2010). Nonetheless, a compensatory fine must "be based upon evidence of complainant's actual loss . . . . [I]t is well settled . . . that [a] court may, in a proceeding for civil contempt, impose [a] remedial punishment of a fine payable to an aggrieved litigant as compensation for the special damages he may have sustained by reason of the contumacious conduct of the offender. . . . [S]uch a compensatory fine must necessarily be limited to the actual damages suffered by the injured party as a result of the violation of [a court order]." (Citations omitted; internal quotation marks omitted.) *DeMartino* v. *Monroe Little League, Inc.*, supra, 278–79.

In determining that the plaintiff had been unjustly enriched by her failure to pay the expenses associated with the marital residence, the court fashioned remedial compensation in the form of an offset against the defendant's support arrearage and ongoing support obligation. In this circumstance, however, the court erred in valuing the "compensatory fine." Although the court properly found that the plaintiff had failed to pay expenses related to the marital residence, the court erred in failing to determine whether the defendant actually was harmed in an amount equal to $52,000, the sanction it imposed. Accordingly, we conclude that the court exceeded its discretion in formulating the $52,000 offset.[12]

---

[12] In addition, we note that, on remand, the court should consider the support guidelines and best interests of the minor children in determining whether and in what amount, if any, to offset against the defendant's support obligation. See *Santoro* v. *Santoro*, 70 Conn. App. 212, 218–19, 797 A.2d 592 (2002).

## III

### ATTORNEY'S FEES

The plaintiff next claims that the court erred in awarding the defendant attorney's fees. Specifically, the plaintiff argues that "[i]n light of the existence of the arrearage, [the] [p]laintiff's good-faith defenses to [the] [d]efendant's claims of contempt, that necessary factual predicates for a contempt finding against the [p]laintiff relating to the refinancing/sale of the [m]arital [r]esidence were not established, and that there has been no financial detriment to the [d]efendant as a result of the [f]oreclosure [a]ction, the trial court should not have awarded attorney's fees."

The plaintiff further argues, in her reply brief, that the court provided an improper "blanket" award of fees and "made a number of egregious factual and legal errors in awarding attorney's fees." Specifically, the plaintiff argues that the court improperly punished her based on its erroneous finding that the defendant's business was destroyed due to her actions and that the court, in formulating the award, failed to consider her financial circumstances, the best interests of the children and "what portions of the requested attorney's fees were attributable to contempt on the part of the plaintiff," as the plaintiff "cannot be properly charged with any time that [the] [d]efendant's counsel spent dealing with the IRS or the 'subrogation' of the IRS lien as part of a finding of contempt." We disagree with the plaintiff that the court abused its discretion in awarding attorney's fees because of her contemptuous conduct but agree that the court should not have awarded fees related to the defendant's time spent negotiating with the IRS.

"Our law for awarding attorney's fees in contempt proceedings is clear. General Statutes § 46b–87 provides that the court may award attorney's fees to the

prevailing party in a contempt proceeding. The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . In making its determination, the court is allowed to rely on its familiarity with the complexity of the legal issues involved. Indeed, it is expected that the court will bring its experience and legal expertise to the determination of the reasonableness of attorney's fees. . . . [T]he award of attorney's fees pursuant to § 46b-87 is punitive, rather than compensatory . . . ." (Internal quotation marks omitted.) *Kravetz* v. *Kravetz*, 126 Conn. App. 459, 471–72, 11 A.3d 1141 (2011). Here, the court acted within its discretion in determining that the defendant, as the prevailing party in the contempt actions, was entitled to an award of attorney's fees.

"[W]here contempt is established, the concomitant award of attorney's fees properly is awarded pursuant to § 46b-87 and is restricted to efforts related to the contempt action." (Internal quotation marks omitted.) *Medvey* v. *Medvey*, supra, 98 Conn. App. 285 n.6; see also *Eldridge* v. *Eldridge*, 244 Conn. 523, 538, 710 A.2d 757 (1998). The defendant's negotiations with the IRS were unrelated to the contempt action in that they were an obligation of the defendant pursuant to the agreement and judgment. That is, the defendant would have been obligated either to secure the release of or to "subrogate" the IRS liens, prior to and independently of the plaintiff's actions constituting her contumacious conduct. The court exceeded its discretion in awarding fees for such efforts by the defendant. Accordingly, we vacate the award of attorney's fees and remand this matter to the court for further proceedings in accordance with this opinion.

IV

MOTIONS TO RECONSIDER/REARGUE
AND REOPEN JUDGMENT

The plaintiff's final claims on appeal are that the court improperly denied her motion "for reconsideration,

reargument, articulation and to re-open evidence," and failed to reopen its judgment by refusing to consider certain evidence. We disagree.

As to the consolidated motion for reconsideration and reargument, the plaintiff argues that her motion "presented the trial court with an opportunity to correct the contract construction error regarding the agreement. It was error for the trial court not to grant reconsideration and reverse the finding of contempt against the plaintiff." A review of the plaintiff's consolidated motion reveals that the plaintiff sought reconsideration of the court's contempt finding regarding her failure to refinance or sell the marital residence on the ground that the court improperly failed to consider evidence of "other liens . . . ." Moreover, the plaintiff contended in her motion that the defendant had not met his burden of proof in that he failed to produce any evidence of a written subordination agreement from the IRS or evidence that the alleged "other liens" had been released.

"The granting of a motion for reconsideration . . . is within the sound discretion of the court. The standard of review regarding challenges to a court's ruling on a motion for reconsideration is abuse of discretion. As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Swanson* v. *Groton*, 116 Conn. App. 849, 866, 977 A.2d 738 (2009). Based on our analysis in part I A of this opinion pertaining to the record on appeal, we are left to speculate as to the specific factual and legal basis for that portion of the contempt ruling challenged by the plaintiff's motion for reconsideration and reargument. Accordingly, we do not have a factual or legal basis sufficient to determine that the court abused its discretion in denying the motion.

With regard to the motion to reopen the judgment, the plaintiff argues that she presented the court with evidence that there was no deficiency judgment relating to the foreclosure of the marital residence. The plaintiff argues that "good cause mandated reopening the judgment" under the circumstances because the evidence demonstrated that the factual predicate underlying the court's award of the $52,000 credit was erroneous. We decline to reach this issue, as it is rendered moot by our determination in part II of this opinion.

The judgment with respect to the order providing for a $52,000 offset against the defendant's unallocated support arrearage and ongoing support obligation is reversed, the award of $14,408 in attorney's fees is vacated and the case is remanded for reconsideration of sanctions and attorney's fees in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.