GINA MCCARTHY, COMMISSIONER OF
ENVIRONMENTAL PROTECTION *v.*
CADLEROCK PROPERTIES JOINT
VENTURE, L.P.
(AC 32293)

Beach, Alvord and Borden, Js.

Argued September 14—officially released November 15, 2011

*Michael G. Albano*, for the appellant (defendant).

*Sharon M. Seligman*, assistant attorney general, with whom were *David H. Wrinn*, assistant attorney general, and, on the brief, *Richard Blumenthal*, former attorney general, and *Patricia A. Horgan* and *Kimberly P. Massicotte*, assistant attorneys general, for the appellee (plaintiff).

BORDEN, J. The defendant, Cadlerock Properties Joint Venture, L.P., appeals from the judgment of the trial court ordering permanent injunctive relief that requires it to comply with a 1997 order of the plaintiff, Gina McCarthy, the former commissioner of environmental protection,[1] and assessing a civil penalty of $282,000[2] for noncompliance with that order.[3] The defendant claims that the court (1) improperly considered the liability and financial resources of nonparties in assessing a civil penalty and (2) failed to assess properly the defendant's ability to pay a civil penalty.[4] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant is a limited partnership under the laws of Ohio with a principal place of business in Newton Falls, Ohio, and is not registered to do business in Connecticut. The general partner of the defendant is Cadlerock,

---

[1] Sidney J. Holbrook was the commissioner when the order was issued.

[2] The plaintiff had proposed a total penalty of $1,935,000. She calculated that penalty as follows: (1) $90,000 for violation of the order from August, 1999, to February, 2001 (18 months at $5000 per month); (2) $765,000 for violation of the order from March, 2001, to June, 2005 (51 months at $15,000 per month); and (3) $1,080,000 for violation of the order from July, 2005, to January, 2010 (54 months at $20,000 per month). We note that the plaintiff's proposed penalty was only a small fraction of the statutory maximum because General Statutes § 22a-438 allows for a penalty of up to $25,000 *per day* for continuous violations, and that the penalty as actually imposed by the court is an even smaller fraction of the statutory maximum.

[3] The defendant admitted at trial that it did not comply with the provisions of the order in question; thus, the only issue at trial concerned potential relief.

[4] At oral argument in this court, the defendant attempted to raise new arguments that the trial court improperly considered other factors related to the civil penalty. Because the defendant did not raise these issues in its brief and raised them for the first time at oral argument, we decline to address them. See *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005) (claims cannot be raised for first time at oral argument before reviewing court), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

Inc., an Ohio corporation. Daniel C. Cadle was the president of Cadlerock, Inc., until 2008, and is now the chairman of Cadlerock, Inc., and The Cadle Company. Cadle is also the sole shareholder of Cadlerock, Inc., and The Cadle Company. The defendant buys real estate and loans, obtains title to those properties and obtains financing from banks jointly with Cadlerock Joint Venture, L.P., an affiliated entity, whose general partner is also Cadlerock, Inc.

The defendant is the owner of 335 acres of real property located between 392 and 460 Squaw Hollow Road in the towns of Willington and Ashford. The defendant obtained ownership of the property by deed dated November 15, 1996, from an affiliated entity, Cadle Properties of Connecticut, Inc. That entity obtained ownership of the property on September 7, 1995, via a deed in lieu of foreclosure from Ashford Development Company in connection with a loan owed to Cadle Company of Connecticut, Inc., another affiliated entity.

On August 15, 1997, the plaintiff issued to the defendant the administrative order in question, namely, department of environmental protection pollution abatement order number SRD–088.[5] Following issuance of the order, the defendant administratively appealed the plaintiff's order. A hearing was held before a department of environmental protection hearing officer over the course of five days, and a final decision affirming the order was issued on October 23, 1998. The final decision was affirmed by the Superior Court on May 5, 1999.[6] The order applied to the entire property.

---

[5] The order required, among other things, that the defendant hire a consultant to perform a comprehensive investigation to determine the potential impact of the conditions at the site on human health and the environment, both on site and off site, including, but not limited to, the existing and potential extent and degree of soil, groundwater and surface pollution.

[6] The Superior Court judgment was subsequently affirmed by our Supreme Court. See *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001).

After years of noncompliance, the plaintiff commenced this enforcement action in September, 2007. After a trial, the court rendered judgment ordering permanent injunctive relief requiring the defendant to comply with the order and assessing a civil penalty of $282,000 for noncompliance therewith. This appeal followed. Additional facts will be set forth as necessary.

The defendant frames its argument in its brief as two separate and distinct claims, namely, that the court (1) improperly considered the liability and financial resources of nonparties in assessing a civil penalty; and (2) failed to assess properly the defendant's ability to pay a civil penalty. We note, however, that the arguments in support of these two claims overlap significantly because the ability of a defendant to pay a civil penalty is but one component of the "size of the business involved" factor used by our courts in assessing civil penalties. See *Keeney* v. *L & S Construction*, 226 Conn. 205, 214, 626 A.2d 1299 (1993). Therefore, because of this significant, substantive overlap, we treat the two claims as one, namely, that, in employing the "size of the business involved" factor pursuant to General Statutes § 22a-438 (a), the court improperly considered the liability and financial resources of nonparties. We disagree.

The court imposed the penalty in question pursuant to § 22a-438 (a),[7] which gives it the discretion to assess penalties for violations of environmental statutes. See *Keeney* v. *Old Saybrook*, 237 Conn. 135, 168, 676 A.2d 795 (1996). We therefore review the court's decision to

---

[7] General Statutes § 22a-438 (a) provides in relevant part: "In determining the amount of any penalty assessed under this subsection, the court may consider the nature, circumstances, extent and gravity of the violation, the person or municipality's prior history of violations, the economic benefit resulting to the person or municipality from the violation, and such other factors deemed appropriate by the court. The court shall consider the status of a person or a municipality as a persistent violator. . . ."

impose a civil penalty to determine whether it abused its discretion. "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . ." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 274, 819 A.2d 773 (2003); see also *Rocque* v. *Light Sources, Inc.*, 275 Conn. 420, 442, 881 A.2d 230 (2005).

General Statutes §§ 22a-226 (a)[8] and 22a-438 (a) provide for the assessment of civil penalties against those who have been found by a court to have violated the Solid Waste Management Act, General Statutes § 22a-207 et seq., and the Water Pollution Control Act, General Statutes § 22a-416 et seq. Penalties may be assessed both for each violation and for each day that the violation occurred. In determining the amount of penalties for which a defendant may be liable, § 22a-438 (a) provides that a court "may consider the nature, circumstances, extent and gravity of the violation, the person or municipality's prior history of violations, the economic benefit resulting to the person . . . from the violation, and such other factors deemed appropriate by the court. . . ." In *Carothers* v. *Capozziello*, 215 Conn. 82, 103–104, 574 A.2d 1268 (1990), our Supreme Court set forth additional factors to be considered by a court in assessing civil penalties pursuant to § 22a-226, and in *Keeney* v. *L & S Construction*, supra, 226 Conn. 214–15, the court held that those factors also guide courts in assessing penalties under § 22a-438. The factors "include, but are not limited to: (1) the size of

---

[8] General Statutes § 22a-226 (a) provides in relevant part: "Any person who violates any provision of this chapter or any regulation, permit or order adopted or issued under this chapter, or any owner of land who knowingly permits such violations to occur on his land, shall be assessed a civil penalty not to exceed twenty-five thousand dollars, to be fixed by the court, for each offense. . . ."

the business involved; (2) the effect of the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith efforts made by the business to comply with applicable statutory requirements; (5) any economic benefit gained by the violations; (6) deterrence of future violations; and (7) the fair and equitable treatment of the regulated community." *Carothers* v. *Capozziello,* supra 103–104.

The defendant's contention focuses on the first of those factors, namely, the "size of the business involved" in the polluting activity. In this particular instance, the defendant portrays the company in question as an individual entity with no checking account and asserts that its only asset is the 335 acre property that is subject to the order. As the court properly concluded, however, the size of the business in question is considerably greater.

In reaching its conclusion, the court found that the defendant, its general partner Cadlerock, Inc., and Cadlerock Joint Venture, L.P., maintain a business operation large enough to sustain a debt of over $24 million. Furthermore, the court found that the defendant does not act in isolation; rather, its finances are inextricably intertwined with Cadlerock Joint Venture, L.P., and Cadlerock, Inc., and all three companies are under the control of the same person, Cadle.

We conclude that the factual findings of the court and the supporting evidence adequately support the court's conclusion that the size of the business involved in the polluting activity is not, under these circumstances, limited to the sole corporate entity that is the defendant in this enforcement action. Because the defendant does not have a checking account and thus does not control its own finances, it is reasonable to conclude that either The Cadle Company or another

affiliated entity or person makes the decisions regarding when funds will be expended on behalf of the defendant. Furthermore, from 2005 to 2009, millions of dollars of revenue were coming into the defendant company from the sale of properties, yet, as Cadle testified, the money was deposited into a U.S. Bank National Association account from which Cadlerock, Inc., could withdraw money. In addition, Cadle and The Cadle Company have paid legal bills on behalf of the defendant. Thus, the evidence supports the court's conclusion that there are sufficient financial resources readily available to the defendant and that the decision whether to expend those financial resources is controlled by Cadle and his affiliated entities.

Consequently, the fact that resources flow, relatively freely, through this network of interrelated entities that are substantially controlled by the same individual, Cadle, supports the conclusion that these organizations should be considered together when determining the size of the business involved in the polluting activity. Under these circumstances, it would require the court to blink at reality to deny it the discretion to take into account the size of the entire interlocking and interrelated business enterprise in determining the size of the business involved in the polluting activity.[9]

Furthermore, to the extent that the defendant specifically argues that the court improperly assessed the defendant's ability to pay a civil penalty in its determination of the size of the business involved because of the

[9] The defendant cites a recent case from this court, *Rossman* v. *Morasco*, 115 Conn. App. 234, 261, 974 A.2d 1, cert. denied, 293 Conn. 923, 980 A.2d 912 (2009), for the proposition that a court cannot award a judgment against a person who is not party to an action. Although this is true, the defendant mischaracterizes the nature of the court's ruling in the present case because no penalty has been assessed against any person or entity other than the defendant. Thus, the case law the defendant cites to for this proposition is not pertinent.

defendant's limited financial resources, we are unable to review that claim. "It is well established that [i]t is the responsibility of the appellant to provide an adequate record for review as provided in Practice Book § 61-10." (Internal quotation marks omitted.) *Calo-Turner* v. *Turner*, 83 Conn. App. 53, 56, 847 A.2d 1085 (2004). Practice Book § 61-10 provides in relevant part: "The term 'record' . . . includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety." The defendant failed to satisfy its fundamental appellate requirement to provide this court with the transcripts of the trial proceedings on which it bases its claims.

The defendant devotes approximately five pages of its appellate brief to outlining the reasons why it would be unable to pay any sort of a civil penalty. In support of this argument, the defendant cites extensively to transcripts from the trial proceedings that it did not provide to this court. Furthermore, the plaintiff does not concede the underlying facts that the defendant uses to support its claim of financial distress. "[B]ecause the defendant failed to present an adequate record for review, [w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court." (Internal quotation marks omitted.) *Knutson Mortgage Corp.* v. *Bernier*, 67 Conn. App. 768, 773, 789 A.2d 528 (2002). "Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . ." (Internal quotation marks omitted.) *Bradley* v. *Randall*, 63 Conn. App. 92, 95–96, 772 A.2d 722 (2001).

The judgment is affirmed.

In this opinion the other judges concurred.