******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VILLAGE MORTGAGE COMPANY *v.* JAMES VENEZIANO
## (AC 38824)

Alvord, Mullins and Beach, Js.

*Syllabus*

The plaintiff corporation brought this action against the defendant, who
previously was a founding member, shareholder, officer and director
of the plaintiff, seeking an injunction to preclude the defendant from
accessing the plaintiff's premises and money damages for the defendant's
alleged misappropriation of corporate funds through conversion, statu-
tory theft, and embezzlement from January, 2004 through June, 2014.
The defendant filed a counterclaim, which claimed, in relevant part,
that the funds alleged to have been taken by him were funds owed to
him for back pay, as well as funds he had invested in the plaintiff. The
defendant also claimed, by way of special defense, that the plaintiff's
causes of action for conversion, statutory theft, and embezzlement were
barred by the applicable three year statute of limitations (§ 52-577).
Following a trial to the court, the court rendered judgment in part for
the plaintiff on the complaint and for the plaintiff on the defendant's
counterclaim, from which the defendant appealed and the plaintiff cross
appealed to this court. *Held*:

1. The trial court's factual findings rejecting the amount of claimed contribu-
   tions made by the defendant to the plaintiff and finding that the advances
   and withdrawals made by the defendant were unauthorized were sup-
   ported by the testimony and exhibits in the record and were not clearly
   erroneous: although the defendant contended that the trial court mistak-
   enly relied on a forensic accountant's report in concluding that the
   defendant had misappropriated funds and in determining the amount
   of those funds, the trial court found the forensic accountant's report
   credible, and this court deferred to the trial court's credibility determina-
   tions; furthermore, the trial court also found the report of the plaintiff's
   chief financial officer accurate and reliable, and relied heavily on the
   chief financial officer's report and testimony at trial in reaching its
   determinations concerning the defendant's misappropriation of the
   plaintiff's funds, and the defendant did not raise a claim on appeal
   concerning the court's reliance on that report.

2. The defendant's challenges to certain of the trial court's discovery rulings
   were not reviewable, the defendant having failed to meet his burden of
   providing this court with an adequate record from which the alleged
   claims of error could be reviewed, and having failed to brief one of his
   claims adequately; moreover, although the defendant claimed that the
   trial court, in denying his motion for discovery of information, improp-
   erly accepted the representations of the plaintiff's counsel concerning
   compliance and made credibility determinations without a hearing, the
   court expressly stated that if the defendant disagreed with the plaintiff's
   representation, he should file a motion to compel to bring the matter
   properly before the court, which he failed to do, and, therefore, the
   defendant was not deprived of an opportunity to seek compliance and
   he presented no evidence demonstrating that he was harmed by the
   court's ruling.

3. This court declined to review the defendant's claims that the trial court
   improperly failed to conclude that the plaintiff intentionally spoliated
   evidence or engaged in discovery misconduct, the defendant having
   failed to raise either claim before the trial court or in his posttrial brief.

4. The trial court properly concluded that the three year statute of limitations
   under § 52-577 was not tolled, pursuant to statute (§ 52-595), by the
   defendant's fraudulent concealment of his misconduct, and that the
   plaintiff, therefore, was precluded from recovering damages that accrued
   prior to October, 2009, which was three years before the commencement
   of this action; although the plaintiff claimed that it was unaware of the
   defendant's misappropriations until an investigation was done in 2012
   and that, prior to 2012, the defendant had exclusive control over the
   plaintiff's finances and used that control to manipulate the accounting

records to conceal his activities, the trial court found that there were other employees in the plaintiff's financial department who were inputting entries at the request of the defendant, that, since 2004, the employees were aware of the defendant's misappropriations, which were transparent, open and notorious, and, thus, that the knowledge of the bookkeepers and other financial employees of the defendant's activities could be imputed to the plaintiff, and the plaintiff cited no legal authority for the proposition that knowledge of a corporation can only be imputed through its board of directors.

Argued April 12—officially released July 25, 2017

*Procedural History*

Action for, inter alia, an injunction precluding the defendant from accessing the plaintiff's premises, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the judicial district of Litchfield, where the defendant filed a counterclaim; thereafter, the court, *Pickard, J.*, sustained the plaintiff's objections to the defendant's request for production; subsequently, the court, *J. Moore, J.*, denied the defendant's motion for order; thereafter, the court, *J. Moore, J.*, denied in part the defendant's motions to compel and for sanctions; subsequently, the matter was tried to the court, *J. Moore, J.*; thereafter, the court, *J. Moore, J.*, granted the plaintiff's motion for a temporary injunction; subsequently, the court, *J. Moore, J.*, rendered judgment in part for the plaintiff on the complaint and for the plaintiff on the counterclaim; thereafter, the court, *J. Moore, J.*, denied the plaintiff's motion for reconsideration and issued an amended memorandum of decision, and the defendant appealed and the plaintiff cross appealed to this court. *Affirmed.*

*Gregory T. Nolan*, with whom, on the brief, was *Patsy M. Renzullo*, for the appellant-appellee (defendant).

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellee-appellant (plaintiff).

*Opinion*

ALVORD, J. The defendant, James Veneziano, appeals from the judgment of the trial court rendered in favor of the plaintiff, Village Mortgage Company (company), after a trial to the court, awarding the plaintiff $2,080,185.09 in damages for the defendant's misappropriation of corporate funds through conversion, statutory theft, and embezzlement. On appeal, the defendant claims that (1) the court's factual findings regarding statutory theft were clearly erroneous, (2) the court's discovery rulings on October 27, 2014, December 9, 2014, and January 16, 2015, "constitute reversible error," and (3) the court improperly failed to conclude that the plaintiff intentionally spoliated evidence or engaged in discovery misconduct. The plaintiff cross appeals from the judgment, claiming that the court improperly ruled in favor of the defendant on his statute of limitations special defense and barred its recovery for damages that occurred prior to October 16, 2009. Specifically, the plaintiff argues that the court improperly failed to conclude that the defendant's fraudulent concealment of his misconduct tolled the applicable statute of limitations. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal and the plaintiff's cross appeal. The plaintiff is a closely held stock corporation engaged in the mortgage origination business for residential properties. The defendant was a founding member, shareholder, officer and director of the plaintiff, which was incorporated on July 1, 1998. He has a bachelor's degree in business science and extensive experience in banking. Because of his financial services background, he directed, supervised, and controlled all of the financial aspects of the plaintiff from its inception until his retirement in mid to late 2010. The defendant had served as the plaintiff's vice president and treasurer, and he continued to assert his influence over financial matters until his removal from the board of directors in 2012. The plaintiff's cofounder, Laurel Caliendo, initially was the corporate secretary and subsequently became the plaintiff's president in 2000. She handled the processing, closing, funding, delivery, and servicing of the loans, as well as the selling of the loans in the secondary market.

At least as early as 2004, the defendant and Caliendo withdrew moneys from the plaintiff's corporate funds. These purported advances and loans were taken without approval from the board of directors. Sometime in 2012, following the defendant's retirement and continued involvement in the plaintiff's financial matters, the plaintiff promoted Justin Girolimon to the position of chief financial officer. Girolimon had worked for the plaintiff sporadically while he was in high school and college. Beginning in 2009, until he was named the chief

financial officer, Girolimon had reported to the defendant in the plaintiff's accounting and financial department. Girolimon had expressed concerns in 2010 about certain journal entries that the defendant had directed him to make. Sometime in 2012, after the defendant left the company, Girolimon performed a detailed investigation of the defendant's withdrawals from corporate funds. According to the plaintiff, it first became aware of the defendant's misappropriations at the time of Girolimon's 2012 investigation. The plaintiff filed the complaint in the present action on October 16, 2012.

The plaintiff's two count complaint sought injunctive relief[1] and damages for conversion, statutory theft, and embezzlement. The defendant filed an answer with four special defenses and a ten count counterclaim. The gravamen of the defendant's defenses and claims was that the funds alleged to have been taken by him were funds owed to him for back pay and funds he had invested in the company. The defendant also claimed that the plaintiff's cause of action was barred by the applicable three year statute of limitations, General Statutes § 52-577.[2]

During a twelve day trial, the court heard testimony from several witnesses and admitted 113 exhibits. The exhibits included, inter alia, a report by Richard Finkel, a forensic accountant; the plaintiff's yearly audited financial statements; copies of bank checks and withdrawal slips; and the defendant's personal financial statements. Following trial, the parties submitted extensive posttrial briefs summarizing their respective positions. On December 23, 2015, the court issued a memorandum of decision in which it rendered judgment for the plaintiff on the second count of its complaint and on the defendant's ten count counterclaim. The court amended its memorandum of decision on December 31, 2015. The plaintiff filed a motion for reconsideration on January 7, 2016, which it amended on January 12, 2016. On January 27, 2016, the court issued a second amended memorandum of decision, ninety-four pages in length, in which it vacated all prior memoranda of decision. The court also issued a separate memorandum of decision on January 27, 2016, addressed to the plaintiff's motion for reconsideration.

In its comprehensive memorandum of decision, the court meticulously evaluated the evidence with respect to each of the parties' claims. With respect to the issues on appeal and cross appeal, the court made the following relevant findings and conclusions: (1) the defendant owed fiduciary duties to the plaintiff; (2) the defendant "offered virtually no resistance to the allegations" of the plaintiff's complaint; (3) the defendant claimed that the plaintiff improperly withheld documents that would have proven the financial investments he had made in the company, but the court gave "no credit" to that argument;[3] (4) Caliendo testified credibly that she had

acknowledged her inappropriate withdrawal of corporate funds after Girolimon's investigation and that she had entered into an agreement with the board of directors for the repayment of those funds; (5) "the defendant's credibility was impeached multiple times throughout the trial and in regard to almost every issue in this case"; (6) "the record is rife with examples of the defendant trying to categorize the [plaintiff's] financial records in dishonest fashion so as to mislead the directors, shareholders, or outside auditors"; (7) the defendant had the ultimate responsibility for the characterization of transactions and accounting entries, and he was responsible for working with the auditors and reviewing the plaintiff's audited financial statements; (8) except for one deposit made in 1998, the defendant failed to prove his claimed investments in the company; (9) the plaintiff's claim that it was unaware of the defendant's misappropriations until Girolimon's investigation in 2012 was not credible; (10) Girolimon credibly explained, in his testimony and in his written investigative report, how the defendant misappropriated the plaintiff's funds and the amount that he had misappropriated; (11) because the defendant lacked computer ability, the plaintiff's bookkeepers and other financial employees input the defendant's handwritten notes into the QuickBooks system, and they had actual knowledge of the defendant's inappropriate advances and withdrawals of company funds, beginning in 2004; (12) prior to 2004, when the plaintiff began to employ the QuickBooks system, the plaintiff's accounting records were handwritten; (13) the plaintiff submitted pre-2004 audited financial statements at trial that provided a baseline for its analysis, and none of those statements showed any amount due from the plaintiff to the defendant; (14) Girolimon's written investigative report, which was admitted as a full exhibit, most accurately detailed the defendant's misappropriations from 2004 through 2014; (15) the defendant provided no credible evidence to contradict the conclusions in the reports submitted by Finkel and Girolimon; (16) the evidence "incontrovertibly established" that the defendant breached his fiduciary duty to the plaintiff "by engaging in self-dealing by taking [the plaintiff's] funds for his own personal use at his sole discretion without any regard to [the plaintiff] or its shareholders"; (17) the defendant did not produce any evidence that would establish fair dealing in those transactions; (18) the plaintiff sustained its burden of proving that the defendant committed conversion, statutory theft and embezzlement; (19) with respect to the defendant's special defense regarding the statute of limitations, § 52-577 was not tolled by the fraudulent concealment doctrine as claimed by the plaintiff; (20) the knowledge of the plaintiff's bookkeepers and other financial employees, with respect to the defendant's misappropriations, was imputed to the plaintiff, thereby limiting its recovery of damages to a three year period prior to the com-

mencement of this action; (21) pursuant to General Statutes § 52-564,[4] the court trebled the damages that occurred subsequent to October 16, 2009; and (22) the defendant provided "no credible evidence" to support the allegations in his ten count counterclaim. Accordingly, the court rendered judgment in favor of the plaintiff with respect to its claims of conversion, statutory theft and embezzlement, and against the defendant on his ten count counterclaim. The court awarded the plaintiff $2,080,185.09 in damages.

In the court's memorandum of decision on the plaintiff's motion for reconsideration, the court responded to the plaintiff's request to reconsider its determination that the doctrine of fraudulent concealment did not operate to toll the statute of limitations. After citing the fraudulent concealment statute; General Statutes § 52-595;[5] and applicable case law, the court acknowledged that it had found numerous examples of the defendant "trying to camouflage, conceal, and even cover up inappropriate withdrawals of company funds." Nevertheless, the court concluded that the doctrine of fraudulent concealment did not apply under the circumstances of this case: "Under any burden of proof . . . and even if the burden were to be shifted to the defendant to disprove fraudulent concealment [as argued by the plaintiff], the court finds that the defendant openly and notoriously took company money, and therefore, could not have fraudulently concealed his wrongdoing." The court recounted the testimony of the plaintiff's two former bookkeepers, one employed from 2003 to 2005, and the other employed from August, 2007, through January, 2009, who testified as to the inappropriate entries made at the defendant's insistence and his request for company checks to purchase personal items. The court also noted that "the defendant relied upon others in the plaintiff's financial department to input the defendant's handwritten ledger sheets and financial notes into the QuickBooks system," beginning in 2004, and continuing thereafter. Consequently, the court imputed this knowledge of the bookkeepers and other employees in the financial department to the plaintiff and limited its recovery to damages for the defendant's misconduct that occurred after October 16, 2009. This appeal and cross appeal followed.

I

DEFENDANT'S APPEAL

In his appeal, the defendant claims that (1) the court's factual findings regarding statutory theft were clearly erroneous, (2) the court's discovery rulings on October 27, 2014, December 9, 2014, and January 16, 2015, "constitute reversible error," and (3) the court improperly failed to conclude that the plaintiff intentionally spoliated evidence or engaged in discovery misconduct.

A

Factual Findings

The defendant's first claim is that the court's factual findings, rejecting the amount of claimed contributions made by the defendant to the company and finding that the advances and withdrawals made by him were unauthorized, were clearly erroneous. The defendant argues that these erroneous factual findings led to the court's improper conclusion that the defendant committed statutory theft.

In particular, the defendant argues that the court mistakenly relied on Finkel's report in concluding that the defendant misappropriated funds and in determining the amount of those funds. The defendant claims that Finkel's report was "slanted" and "defective." He also argues that the court did not properly interpret the plaintiff's audited financial statements, failed to consider transactions dating back to the plaintiff's corporate formation, and failed to examine the plaintiff's standard practices with respect to payments of salaries and capital transactions involving corporate officers. We are not persuaded.

In a case tried before the court, the trial judge is the sole arbiter of the credibility of witnesses and the weight to be afforded to specific testimony. *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 171 Conn. App. 61, 166, 156 A.3d 539 (2017). "[When] the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *BTS, USA, Inc.* v. *Executive Perspectives, LLC*, 166 Conn. App. 474, 493–94, 142 A.3d 342, cert. denied, 323 Conn. 919, 150 A.3d 1149 (2016).

"Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . It is well established that a reviewing court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses

based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Jones* v. *Dept. of Children & Families*, 172 Conn. App. 14, 33, 158 A.3d 356 (2017). "[T]he trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible." (Internal quotation marks omitted.) *Powers* v. *Olson*, 252 Conn. 98, 105, 742 A.2d 799 (2000). Thus, while we review the court's underlying factual determinations under the clearly erroneous standard, our standard of review requires us to defer to the court's evaluation of the credibility of the parties and witnesses. See *Emerick* v. *Emerick*, 170 Conn. App. 368, 379, 154 A.3d 1069 (2017).

In the present case, the court's challenged factual findings are supported by the testimony and exhibits in the record, and the court's explanation of its credibility determinations suffices under the deferential standard of review that we accord such determinations. Although the defendant characterizes Finkel's report as "slanted" and "defective," the court found Finkel's testimony at trial to be "credible" and that "his calculations were scientifically based and objectively verifiable." Significantly, however, the court found Girolimon's report more "accurate" and "reliable," and it relied heavily on Girolimon's report and testimony at trial in reaching its determinations as to how the defendant misappropriated the plaintiff's funds and the amount of the funds that were misappropriated. The defendant's appellate brief criticizes Finkel's report in several respects, yet he does not even mention the court's reliance on Girolimon's report. The defendant has provided no persuasive support for his argument that the court erred in its reliance on the plaintiff's financial reports and audited financial statements or that it misinterpreted those reports and statements. As stated numerous times in the court's ninety-four page memorandum of decision, the defendant presented little or no documentary evidence with respect to his claims, and the court found his testimony not credible. For all of these reasons, the defendant's first claim fails.

## B

### Discovery Rulings

The defendant next claims that discovery rulings made by the court on October 27, 2014, December 9, 2014, and January 16, 2015, "constitute reversible error." He argues that he filed timely requests for the production of the plaintiff's handwritten records from 1998 to 2004, and copies of the general ledger account due to corporate officers, but that the plaintiff failed to produce those documents and the court failed to require compliance. The defendant maintains that the requested documents "contain material facts that would have made a difference in the outcome of the case," and that they would have provided "supporting documentation" for his claims.

With respect to the October 27, 2014 ruling, the defendant claims that the court, *Pickard, J.*, erroneously issued an order sustaining the plaintiff's objections to the defendant's requests for production. A review of the trial court file reveals that Judge Pickard did issue an order on October 27, 2014, which provided: "Order: Sustained. All objections are sustained." There is no further explanation of the court's ruling. Further, the defendant has provided no transcript of any court proceeding that addresses the particular request for production at issue and the objections raised to that request, or an elucidation of the court's decision. This court, as a reviewing court, is left with nothing to review.

"It is well settled that [t]he granting or denial of a discovery request rests in the sound discretion of the court. . . . A court's discovery related orders are subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed." (Citations omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bertrand*, 140 Conn. App. 646, 653, 59 A.3d 864, cert. denied, 309 Conn. 905, 68 A.3d 661 (2013).

As the appellant, the defendant has the burden of providing this court with a record from which this court can review any alleged claims of error. See Practice Book § 61-10. "It is not an appropriate function of this court, when presented with an inadequate record, to speculate as to the reasoning of the trial court or to presume error from a silent record." *Atelier Constantin Popescu, LLC* v. *JC Corp.*, 134 Conn. App. 731, 758, 49 A.3d 1003 (2012). Accordingly, we decline to address this claim.

With respect to the December 9, 2014 ruling, the defendant claims that the court, *J. Moore, J.*, improperly denied his "Motion for Discovery of Information" that he filed on December 1, 2014. The plaintiff filed a reply to the defendant's motion on December 5, 2014, in which it stated that there already had been compliance, as previously ordered by the court. Judge Moore issued the following order on December 9, 2014: "Order: Denied. [The] plaintiff indicates that it has complied with this request. If [the] defendant disagrees, [the] defendant must properly present a motion to compel." The defendant argues that this ruling was improper because the court failed to hold an evidentiary hearing and thereby "violated the holding of *Magana* v. *Wells Fargo Bank, N.A.*, 164 Conn. App. 729, 138 A.3d 966 (2016)." This claim is without merit.

Although the defendant argues that the court accepted the representations of plaintiff's counsel with respect to compliance and made a credibility determination without a hearing, we disagree with the defendant's

interpretation of the court's order. The court expressly stated that if the defendant disagreed with the plaintiff's representation, he should file a motion to compel to bring the matter properly before the court. The defendant was not deprived of an opportunity to seek compliance, and he has presented no evidence demonstrating that he was harmed by this ruling. "The burden is on the appellant to prove harmful error." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bertrand*, supra, 140 Conn. App. 653–54.

With respect to the January 16, 2015 rulings by Judge Moore, the defendant claims that he filed a motion to compel and a motion for sanctions pursuant to the court's December 9, 2014 ruling. The plaintiff filed an objection to the motions and, on January 16, 2015, the court denied the motion for sanctions and denied the motion to compel, except for requiring the plaintiff to produce a designated disc. The defendant claims that the rulings are improper, but, except for setting forth this procedural history, he provides no analysis as to why these rulings were erroneous. "It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *State* v. *Raffone*, 163 Conn. App. 410, 417 n.6, 136 A.3d 647 (2016).

Further, we have no transcript or other documentation that discloses the court's reasons for its rulings. Again, without a record demonstrating that the court abused its discretion, we are left to speculate as to possible error. It is not our role to guess at possibilities, and we will presume that the court acted properly. See *McCarthy* v. *Cadlerock Properties Joint Venture, L.P.*, 132 Conn. App. 110, 118, 30 A.3d 753 (2011). Accordingly, we decline to review this claim.

C

Spoliation of Evidence and Discovery Misconduct

The defendant's final claim on appeal is that the court improperly failed to conclude that the plaintiff intentionally spoliated evidence or engaged in discovery misconduct. Specifically, the defendant's discovery misconduct claim is based on his allegations that he filed discovery requests at the appropriate time, that he was diligent in pursuing those requests, that some of the documents requested do exist, and that the plaintiff intentionally destroyed some of those documents. The defendant's claim of spoliation of evidence is based on the same allegations.

It is not necessary to set forth the legal principles

governing the claims of discovery misconduct or spolia-tion of evidence for the reason that neither claim was raised before the trial court. Although the defendant's counsel commented "isn't it convenient" that certain records were not available; see footnote 3 of this opin-ion; there was no argument before the court that the requested documents were intentionally destroyed or that the plaintiff had engaged in discovery misconduct. The defendant's posttrial brief, which is fifty pages in length, does not allege that the plaintiff's conduct con-stituted discovery misconduct or that it intentionally spoliated evidence. There is no analysis whatsoever with respect to those particular issues that the defen-dant now raises on appeal.

"Practice Book § 60-5 provides in relevant part: 'The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . .' Indeed, 'it is the appellant's responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the require-ment that ordinarily [the appellant] must raise in the trial court the issues that he intends to raise on appeal. . . . For us [t]o review [a] claim, which has been articu-lated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge.' " *Jarvis* v. *Lieder*, 117 Conn. App. 129, 140–41, 978 A.2d 106 (2009). Thus, we will not address the defendant's claims of discovery misconduct and intentional spoliation of evidence.

## II

### PLAINTIFF'S CROSS APPEAL

In its cross appeal, the plaintiff claims that the court improperly failed to conclude that the defendant's fraudulent concealment of his misconduct operated to toll the three year statute of limitations for tort actions. The plaintiff argues that the court erroneously limited its recovery to the three year period prior to the com-mencement of this action. In particular, the plaintiff claims that it was improper to impute the knowledge of the plaintiff's bookkeepers and other financial employees to the corporate plaintiff.[6]

"The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The factual findings that underpin that question of law, however, will not be disturbed unless shown to be clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Jarvis* v. *Lieder*, supra, 117 Conn. App. 146. Because the plaintiff claims that the statute of limitations was tolled by the defendant's fraudulent concealment of his misconduct, we look to § 52-595, the fraudulent con-

cealment statute, and the case law interpreting that statute.

Section 52-595 provides that "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Our Supreme Court has stated that "to toll a statute of limitations by way of our fraudulent concealment statute, a plaintiff must present evidence that a defendant: (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiff's] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on their cause of action." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 799–800, 99 A.3d 1145 (2014).

"The purposes of statutes of limitation include finality, repose and avoidance of stale claims and stale evidence. . . . These statutes represent a legislative judgment about the balance of equities in a situation involving a tardy assertion of otherwise valid rights: [t]he theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (Internal quotation marks omitted.) Id., 806–807.

In the present case, the plaintiff seeks to recover damages for the defendant's misconduct from January, 2004, the time when the plaintiff began using the QuickBooks system, through June 15, 2014. The plaintiff did not commence this action until October 19, 2012. Unless the three year limitation period of § 52-577 is tolled, the plaintiff would be precluded from recovering damages that accrued prior to October, 2009.

The plaintiff claims that it was unaware of the defendant's misappropriations until Girolimon conducted his investigation in 2012. Prior to 2012, the plaintiff argues that the defendant had exclusive control over the plaintiff's finances and used that control to manipulate the accounting records to conceal his activities. According to the plaintiff, the knowledge of its bookkeepers could not be imputed to the company because the board of directors was not apprised of the defendant's misconduct until 2012.

In addressing the plaintiff's tolling claim, the court made several determinations in both memoranda of decision filed on January 27, 2016. In applying the relevant statutes and case law to the evidence presented at trial, the court made the following factual findings and legal conclusions: (1) the plaintiff's claim that it

was unaware of the defendant's misappropriations until Girolimon's investigation in 2012 was not credible; (2) because the defendant lacked computer ability, the plaintiff's bookkeepers and other employees input the defendant's handwritten notes into the QuickBooks system, and they had actual knowledge of the defendant's inappropriate advances and withdrawals of company funds, beginning in 2004; (3) the knowledge of the plaintiff's bookkeepers and other financial employees, with respect to the defendant's misappropriations, could be imputed to the plaintiff, thereby limiting its recovery of damages to a three year period prior to the commencement of this action; (4) the defendant "openly and notoriously" took company money; (5) the defendant "transparently treated company funds as his own," and testified that when he "need[ed] some of [his] moneys, [he] would withdraw" from those funds; (6) the defendant's attitude demonstrated that he was not trying to fraudulently conceal his intentions or "bury a secret"; (7) two of the plaintiff's bookkeepers had knowledge of the defendant's misuse of company funds long before Girolimon's investigation; (8) Linda Kerr, a bookkeeper employed by the plaintiff from 2003 to 2005, testified that the defendant would publicly, in front of other employees, ask her to give him company checks to buy and sell coins at large coin shows; (9) the plaintiff's business did not include the purchase and sale of coins; (10) Alesia Warner, the plaintiff's bookkeeper from August, 2007, through January, 2009, took issue with certain bookkeeping entries that the defendant instructed her to make, including advances to corporate officers; (11) Warner was so concerned about those entries that she refused to sign financials for the plaintiff; (12) beginning in 2004, the defendant relied on others in the plaintiff's financial department to input his handwritten ledger sheets and financial notes into the QuickBooks system, and those entries are reflected in Girolimon's report; and (13) Girolimon's report reflects that those employees input the defendant's inappropriate withdrawals, including, inter alia, charges pertaining to personal credit cards, coin purchases, personal automobile expenses, and commissions.[7]

For these reasons, the court found: "In reviewing the nature and extent of these entries, the inescapable conclusion is that, while financial employees of the company were placing these entries onto QuickBooks, they knew that the defendant was taking unauthorized withdrawals from the company, treating, as he put it, the company's funds as 'my moneys.' " Accordingly, the court concluded: "Under our law and the facts of the present case, the court finds that knowledge of the bookkeepers and other financial employees of the defendant's defalcations is imputed to the plaintiff corporation."

The plaintiff concedes "that it is not disputing the trial court's factual determinations that [the] plaintiff's

bookkeepers were aware that [the] defendant was taking corporate funds for his own personal use. Instead, [the] plaintiff disputes that such knowledge may be imputed to the corporate plaintiff." The plaintiff overlooks the court's factual finding that there were other employees in the plaintiff's financial department who were inputting entries at the request of the defendant. Further, other significant findings include the facts that the employees were aware of the defendant's misappropriations since 2004, and that the defendant's activities were "transparent" and "open and notorious."

Although the plaintiff emphasizes that the board of directors was not aware of the defendant's misappropriations prior to 2012, it cites no legal authority for the proposition that knowledge of a corporation can only be imputed through its board of directors.[8] The plaintiff's position is too restrictive to accommodate the facts of this case. Moreover, there is case law rejecting the claim of fraudulent concealment in situations where the "intensely public nature of [the] process" precludes an evidentiary finding of an intent to conceal; *Bound Brook Assn.* v. *Norwalk*, 198 Conn. 660, 669, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986); and where expressed concerns would direct a plaintiff of ordinary prudence to make reasonable efforts to discover information leading to the discovery of a cause of action. *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 322, 327, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000).

For all of the foregoing reasons, we conclude that, under the circumstances of this case, the trial court properly concluded that the three year statute of limitations was not tolled by the doctrine of fraudulent concealment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court denied the injunctive relief requested in count one of the complaint, and the plaintiff has not challenged that determination in its cross appeal.

[2] The plaintiff does not dispute that § 52-577 is the applicable statute of limitations. Section 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[3] At trial, the defendant testified that all of his records, including the original general ledgers, were kept at the company and that the plaintiff failed to produce them when requested. During closing arguments, the defendant's counsel stated: "[I]sn't it convenient . . . that the records that would exonerate [the defendant] or at least show moneys that he put into the corporation are gone? Lots of documents that are in this—in the plaintiff's exhibits do have original ledger fingerprints. There are bits and pieces that come in here and there. But, unfortunately, the things that we need, the things that [the defendant] needs are gone. Water damage is what we heard, misplaced, couldn't verify. Isn't it convenient?"

The trial court responded that it understood that there had been discovery issues that had been "thoroughly argued" and ruled upon by various judges during the pendency of the action. The defendant's counsel stated that he had not been involved with this case at that point in time. He further stated that he would like to file a discovery motion addressed to "discovery

violations," but he realized it was a problem because the trial had concluded. The court inquired: "I guess the point I wanted to make is there—there are, as of right now, no written discovery motions pending?" The defendant's counsel confirmed there were no pending discovery motions, and the court stated: "So the fact of the matter is, at the present time, [there are] no pending discovery actions. And I guess, to—to make that argument in our final argument, is sort of unsupported by the—by the record at the present time."

[4] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[5] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[6] Although Caliendo, a corporate officer, clearly was aware of the defendant's misconduct prior to 2009, the trial court did not determine whether her knowledge should be imputed to the company. The plaintiff had argued that her interest was adverse to the plaintiff at that time because she, too, was making withdrawals from corporate funds for personal use. "The general rule is that knowledge of an agent will not ordinarily be imputed to his principal where the agent is acting adversely to the latter's interest." *Mutual Assurance Co.* v. *Norwich Savings Society*, 128 Conn. 510, 513, 24 A.2d 477 (1942). Instead, the court concluded that the knowledge of the plaintiff's bookkeepers and other financial employees could be imputed to the company.

[7] The defendant, in his position at the company, was not entitled to collect any commissions.

[8] Although no Connecticut appellate authority is directly on point, our Supreme Court has held that the knowledge of an agent who sold an insurance policy to the insured could be imputed to the insurer: "When an agent acting within the scope of his authority obtains knowledge of a fact relevant to the transaction in which he is engaged, ordinarily that knowledge is imputed to his principal." *Reardon* v. *Mutual Life Ins. Co.*, 138 Conn. 510, 516, 86 A.2d 570 (1952). Also, in *E. Udolf, Inc.* v. *Aetna Casualty & Surety Co.*, 214 Conn. 741, 573 A.2d 1211 (1990), our Supreme Court held that the knowledge of a store manager and bookkeeper of an employee's prior misappropriations of corporate funds could be imputed to the plaintiff corporation for purposes of certain employee dishonesty insurance policies. Id., 748-50.