******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff landlord sought, by way of summary process, to regain possession of certain residential property that was occupied by the defendant tenant. The plaintiff and the defendant were parties to a written, one year lease that commenced on March 1, 2021. The defendant paid her rent in full until June, 2021, when she paid only a partial amount. She included with her partial payment an explanation that she had deducted the cost of recent air conditioning repairs from her rent payment. Both parties agreed that it was the plaintiff's obligation to repair the air conditioning if it was not working. The defendant acknowledged that she did not contact the plaintiff to request the repair but explained that she chose to proceed as she did because she was uncomfortable contacting the plaintiff in light of a civil protective order that she had obtained against the plaintiff. The plaintiff subsequently served the defendant with a notice to quit on July 21, 2021, with a quit date of August 21, 2021. The notice to quit included a use and occupancy disclaimer that stated that payments tendered after the quit date would be accepted for use and occupancy only and not for rent. The plaintiff subsequently commenced the summary process action on September 1, 2021, alleging that the plaintiff had failed to pay rent due on June 1, 2021. The defendant filed an answer that raised several special defenses, including, inter alia, that all rent had been paid to the plaintiff. Thereafter, the trial court issued a memorandum of decision, in which it found that the defendant tendered monthly payments from July through September, 2021, on time and in full; that each check had "rent" written in the memo field; and that, although the plaintiff did not immediately deposit the checks for July, August, and September, the plaintiff eventually deposited them into his account. The court further found that, although the plaintiff did not accept the subsequent rent payments until after the quit date, the plaintiff's acceptance of rent payments tendered after service of the notice to quit but prior to the quit date reinstated the tenancy. The court subsequently dismissed the plaintiff's summary process action, and the plaintiff appealed to this court. *Held:*

1. This court declined to review the plaintiff's claim that the trial court incorrectly concluded that the defendant's tenancy was reinstated, notwithstanding the use and occupancy disclaimer, the plaintiff having failed to provide this court with an adequate record to resolve the factual dispute: the trial transcript was necessary to properly evaluate on appeal whether the evidence presented to the trial court supported that court's factual conclusions, it was the responsibility of the plaintiff as the appellant to provide this court with an adequate record for review, and the plaintiff failed to provide this court with a transcript of the summary process trial, leaving this court with an inadequate record upon which to determine whether the trial court's ruling on this claim was clearly erroneous.

2. This court declined to review the plaintiff's unpreserved claim that the governor's executive orders promulgated during the COVID-19 pandemic altered the required analysis of the case: this court was not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial, and, in any event, the existence of the executive orders did not transform the factual question of the plaintiff's intentions when he accepted the additional payments from the defendant into a legal question; moreover, the plaintiff's failure to provide the court with a transcript of the summary process trial left the court with an inadequate record upon which to review the claim.

3. This court declined the plaintiff's request to adjudicate the merits of the defendant's special defenses: the trial court never reached the special defenses because it found that the plaintiff's acceptance of rent for the months of July, August, and September reinstated the defendant's tenancy and, therefore, having made that finding, the trial court did not

need to address the special defenses, and, as a result, there was nothing for this court to review on appeal.

Argued May 17—officially released December 6, 2022

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New Britain, Housing Session, and tried to the court, *Baio, J.*; judgment of dismissal, from which the plaintiff appealed to this court. *Affirmed.*

*James D. Monte*, self-represented, the appellant (plaintiff).

*Kevin J. Burns*, for the appellee (defendant).

*Opinion*

ELGO, J. In this summary process action based on nonpayment of rent, the plaintiff landlord, J. M., appeals from the judgment of the trial court dismissing the action in favor of the defendant tenant, E. M. On appeal, the plaintiff claims that (1) the court incorrectly found that he had reinstated the tenancy by accepting the defendant's tendered payments labeled as "rent" after service of the notice and after the quit date specified in the notice to quit despite the fact that the notice to quit included a use and occupancy disclaimer and (2) the court's determination also was improper because the governor's executive orders affecting eviction proceedings during the COVID-19 pandemic required that any use and occupancy disclaimer in the notice to quit not be effective until thirty days after the notice was served and required the plaintiff to accept rent payments during that thirty day period. The plaintiff further requests that this court adjudicate the merits of the defendant's affirmative defenses to the summary process action, notwithstanding that the court did not reach the merits of those defenses. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. The plaintiff and the defendant entered into a one year lease of a rental property in Southington that commenced on March 1, 2021, and was set to expire on February 28, 2022. The terms of that lease required the defendant to pay twelve equal monthly payments of $1200 to the plaintiff on the first day of each month. That figure reflected a discount from the fair market value that was intended to compensate the defendant for any inconvenience due to ongoing maintenance and repairs that the plaintiff was performing on the property.

It is undisputed that the defendant failed to tender the full amount of rent due on June 1, 2021. The defendant tendered a portion of the amount owed and withheld the remainder as repayment for repairs to an air conditioning unit that she had performed on the property without notification to, or permission from, the plaintiff. The plaintiff subsequently served a notice to quit on the defendant on July 21, 2021, for nonpayment of rent with a quit date of August 21, 2021. That notice to quit included a use and occupancy disclaimer that stated: "Any payments tendered after the date specified to quit possession or occupancy, or the date of the completion of the pretermination process if that is later, will be accepted for use and occupancy only and not for rent, with full reservation of rights to continue with the eviction action." The plaintiff subsequently commenced a summary process action on September 1, 2021, alleging in his complaint that the defendant had failed to pay rent due on June 1, 2021. The defendant then filed an answer to the summary process complaint, in which

she asserted several special defenses, including that (1) all rent had been paid to the plaintiff, (2) rent was offered to the plaintiff on June 1, 2021, prior to her receipt of the notice to quit, and (3) the eviction was being sought in response to a complaint about the property that she had lodged with the plaintiff.

A trial on the plaintiff's summary process complaint was held on October 21, 2021. After the trial, the court issued a memorandum of decision in which it found that the defendant had tendered the sum of $707.81 for the June, 2021 rent and withheld the sum of $492.19, which the defendant had deducted from the $1200 monthly rent as reimbursement for repair of the air conditioning unit. The parties did not dispute that, if the air conditioning was not working, the plaintiff was obligated to repair it. The defendant also admitted that the lease did not authorize her to engage in self-help to repair the unit. In its memorandum of decision, however, the court credited the defendant's testimony that she did not feel comfortable contacting the plaintiff regarding that repair because the defendant previously had obtained a civil protective order to prevent the plaintiff from entering the premises and having contact with her. The court thus found that the defendant chose to seek repair of the unit from a third party and thereafter provided the plaintiff with proof of payment for that repair.

The court next determined that the defendant tendered all other monthly payments from July through September, 2021, on time and in full.[1] On each check, "rent" was written in the memo field. Although the plaintiff did not immediately deposit the checks for July, August, and September, the court found that the plaintiff retained the checks and eventually deposited them into his account. The only amount that remained unpaid at the time of trial was the June amount of $492.19, which had been used for the repair of the air conditioning unit.

The court ultimately concluded that, "[a]lthough the notice to quit includes the requisite disclaimer that any payments tendered after the notice to quit shall be accepted as use and occupancy, the defendant's payments all included the memo reference that the payments were tendered as rent. Further, they were payments in full [for] each month after the notice to quit. They were not returned or questioned by the plaintiff, but rather were negotiated. Acceptance of rent after service of the notice to quit effectuates a renewal of the tenancy. . . . Consequently, the plaintiff having accepted the payments that were noted as [being] for 'rent' for several months and having negotiated them, all without question, the tenancy is deemed reinstated." (Citation omitted.) In light of the foregoing, the court dismissed the plaintiff's summary process action, and this appeal followed.[2]

## I

On appeal, the plaintiff first contends that the court incorrectly concluded that, notwithstanding the use and occupancy disclaimer, the defendant's tenancy was reinstated when the plaintiff accepted the defendant's rent payments after he had served the defendant with the notice to quit and after the quit date contained in the notice. By contrast, the defendant argues that the court properly dismissed the action because the plaintiff accepted her tender of rent prior to the date specified in the notice to quit. We decline to address the merits of the plaintiff's claim because he has not provided this court with an adequate record to resolve this factual dispute.

We first set forth the applicable legal principles and standard of review. Under Connecticut law, a landlord has the right to terminate tenancy for nonpayment of rent. See General Statutes § 47a-23. A landlord's service of a notice to quit is an act that is "sufficiently unequivocal" to terminate tenancy. *Borst* v. *Ruff*, 137 Conn. 359, 361, 77 A.2d 343 (1950). "A notice to quit is a condition precedent to a summary process action and, if defective, deprives the court of subject matter jurisdiction." *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007).

Notwithstanding an unequivocal notice to quit, a landlord's acceptance of rent prior to the quit date contained in the notice to quit can render the landlord's intent to terminate the tenancy equivocal, repudiate the intent to terminate set forth in the notice to quit, and reinstate the lease. See *Borst* v. *Ruff*, supra, 137 Conn. 361. Whether a landlord intended to accept a tendered payment as rent, therefore, is a "vital question of fact" before the court. Id. "Factual findings are subject to a clearly erroneous standard of review. . . . It is well established that [a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Ursini* v. *Barnett*, 124 Conn. App. 855, 858, 10 A.3d 1055 (2010).

In the present case, the court's determination that the plaintiff accepted rent after service of the notice to quit and after the quit date specified in the notice to quit required the court to make a finding with regard to the plaintiff's intent when he retained the defendant's July, August, and September checks, which is a question of fact. See *Borst* v. *Ruff*, supra, 137 Conn. 361. A determination regarding whether the court's finding was clearly erroneous requires that we review all of the evidence presented to the trial court, including the testimony of the witnesses. Thus, the transcript of the trial is necessary on appeal in order to properly evaluate whether the evidence presented to the trial court supports the court's conclusion that tenancy was reinstated due to the plaintiff's acceptance of rent.

"As the appellant, the [plaintiff] has the burden of providing this court with a record from which this court can review any alleged claims of error." *Village Mortgage Co.* v. *Veneziano*, 175 Conn. App. 59, 72, 167 A.3d 430 (2017). Practice Book § 61-10 (a) provides: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire record is complete, correct and otherwise perfected for presentation on appeal." "The general purpose of [the relevant] rules of practice . . . [requiring the appellant to provide a sufficient record] is to ensure that there is a trial court record that is adequate for an informed appellate review of the various claims presented by the parties." (Internal quotation marks omitted.) *Maye* v. *Canady*, 214 Conn. App. 455, 461, 280 A.3d 1270, cert. denied, 345 Conn. 916,      A.3d      (2022). "It is not an appropriate function of this court, when presented with an inadequate record, to speculate as to the reasoning of the trial court or to presume error from a silent record." (Internal quotation marks omitted.) *Village Mortgage Co.* v. *Veneziano*, supra, 72.

The plaintiff has not provided this court with a copy of the October 21, 2021 transcript. In the absence of the transcript, we are left to speculate as to whether the court's findings are clearly erroneous, which we cannot do. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009) ("speculation and conjecture . . . have no place in appellate review" (internal quotation marks omitted)). Accordingly, we decline to review the plaintiff's claim that the court improperly determined that the defendant's tenancy was reinstated when he accepted the defendant's tender of rent after service of the notice to quit and after the date specified in the notice to quit.

II

We next briefly address the two additional claims raised by the plaintiff regarding (1) the governor's exec-

utive orders affecting eviction proceedings during the COVID-19 pandemic and (2) his request that this court rule on the defendant's affirmative defenses. The plaintiff asserts that the governor's executive orders promulgated during the COVID-19 pandemic alter the required analysis of this summary process case. Further, the plaintiff requests that this court adjudicate the merits of the defendant's affirmative defenses, notwithstanding that the trial court did not reach the merits of those defenses.

With respect to the impact of the executive orders, we first note that the record does not reflect that the plaintiff raised this claim before the trial court. Our rules of practice and precedent provide that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 60-5; see *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 335, 838 A.2d 135 (2004). "The theory upon which a case is tried in the trial court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review. Moreover, an appellate court should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial." *Ritcher* v. *Childers*, 2 Conn. App. 315, 318, 478 A.2d 613 (1984). In any event, the existence of the executive orders does not transform the factual question the court had to resolve, specifically, the plaintiff's intent when accepting the additional payments from the defendant, into a legal question. Consequently, the plaintiff's failure to provide us with the transcript of the summary process trial leaves us with an inadequate record to review this claim.

With respect to the plaintiff's claim regarding the adequacy of the defendant's special defenses, we note that the trial court never reached the special defenses because it found that the plaintiff's acceptance of rent for the months of July, August, and September reinstated the defendant's tenancy. Having made that finding, the trial court did not need to address the defendant's special defenses, and, as a result, there is nothing for us to review on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[1] Pursuant to General Statutes § 47a-15a, a landlord may terminate a rental agreement for nonpayment of rent "[i]f rent is unpaid when due and the tenant fails to pay rent within nine days thereafter . . . ." Both parties agree that the defendant's rent was due on the first of each month. Thus, the court's finding that the defendant's rent payments were tendered "on time" necessarily means that the defendant tendered rent on the first of

each month in question, or within nine days thereafter. Neither the defendant, nor the plaintiff, dispute this factual finding regarding the timing of these payments.

[2] Following the conclusion of trial, the plaintiff filed a motion for articulation requesting, in relevant part, "information on the legal conclusions regarding the validity of all special defenses provided by the [defendant] including the relevant statutes and the case law through which opinions were derived . . . ." The court denied the motion, stating that "the court need not address the defendant's special defenses, as it was unnecessary to consider the special defenses in light of the dismissal of this action. The basis for the court's dismissal is already articulated and set forth in the court's written decision issued after the trial in this matter." The plaintiff thereafter did not file a motion for review of that ruling with this court.

---