******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PARK SEYMOUR ASSOCIATES, LLC *v.*
CITY OF HARTFORD ET AL.

PARK SQUIRE ASSOCIATES, LLC *v.*
CITY OF HARTFORD ET AL.
(AC 47132)

Alvord, Clark and Pellegrino, Js.

*Syllabus*

The plaintiff in each case, following a consolidated trial on claims that the defendant board of assessment appeals improperly computed the assessment on certain of their real property because the properties were subject to tax abatement agreements entered into with the defendant city, appealed from the trial court's judgment for the defendants. The plaintiffs claimed, inter alia, that the court erroneously found that they had not proven the existence of such tax abatement agreements. *Held*:

This court declined to reach the merits of the plaintiffs' claim that the trial court's finding that there were no tax abatement agreements between the parties was clearly erroneous, the plaintiffs having failed to provide an adequate record for review.

Argued November 19, 2024—officially released February 4, 2025

*Procedural History*

Appeal, in each case, from the decision of the defendant board of assessment appeals of the named defendant concerning assessments on certain of the plaintiff's properties, and seeking reinstatement of an alleged tax abatement agreement and other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the judicial district of New Britain, where the cases were consolidated for trial; thereafter, the cases were tried to the court, *Budzik, J.*; judgment for the defendants in each case, from which the plaintiffs appealed to this court. *Affirmed*.

*Robert M. DeCrescenzo*, for the appellants (plaintiff in each case).

*Jonathan H. Beamon*, senior assistant corporation counsel, for the appellees (defendants in each case).

*Opinion*

PER CURIAM. The plaintiffs, Park Seymour Associates, LLC (Seymour), and Park Squire Associates, LLC (Squire), appeal from the judgments rendered in favor of the defendants, the city of Hartford (city) and the city's Board of Assessment Appeals, after a consolidated trial to the court in these actions brought as municipal tax appeals pursuant to General Statutes § 12-119.[1] On appeal, the plaintiffs claim that the trial court's judgments in favor of the defendants were improper in that the court made a clearly erroneous finding that the plaintiffs had not proven the existence of tax abatement agreements.[2] We affirm the judgments of the trial court.

---

[1] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . ."

In the present case, the trial court assumed, without deciding, that § 12-119 was the proper method by which a taxpayer may challenge the breach of an alleged tax abatement agreement. Because we do not reach the merits of the plaintiffs' claim, we also need not address the propriety of proceeding pursuant to § 12-119.

[2] The plaintiffs also claim on appeal that the trial court erred in failing to render judgments in favor of the plaintiffs on a theory of equitable estoppel. In its memorandum of decision, the court noted that the plaintiffs appeared to be seeking to assert an estoppel claim during trial through testimonial evidence. The court stated that it was not considering such a claim because it had not been pleaded. It further stated, on the basis of its factual findings, that any claim of estoppel would be unavailing.

In their appellate brief, the plaintiffs ignore the procedural grounds on which the trial court rejected their claim and brief only the merits of their estoppel claim. We conclude that the court properly declined to address the unpleaded claim; see *Lebanon Historical Society, Inc.* v. *Attorney General*, 209 Conn. App. 337, 351 n.12, 268 A.3d 734 (2021) ("[i]t is axiomatic that the plaintiff's claims are limited to the allegations of its complaint"); and, therefore, we need not reach its merits. Additionally, the plaintiffs'

The following facts, as found by the trial court, are relevant to our resolution of this appeal. "On February 21, 1997, Seymour Associates Limited Partnership (SA) entered into a written tax abatement agreement (1997 abatement agreement) with the [city] concerning the real property and improvements at 142, 158-170, 167, 169-171 and 180 Seymour Street in Hartford (Seymour Street properties). . . . The 1997 abatement agreement had an express term of fifteen consecutive fiscal years. . . .

"In July of 2003, Park Squire Associates Partnership (PSAP) entered into a written tax abatement agreement (2003 abatement agreement) with the [city] concerning the real property and improvements at 23-31 Squire Street in Hartford and 457-495 Park Street in Hartford (Squire/Park Street properties). . . . The Seymour Street properties and the Squire/Park Street properties together are hereinafter referred to collectively as the 'subject properties.' The 2003 abatement agreement had an express term of fifteen years, beginning with the 2003 grand list and ending with the 2017 grand list. . . . The subject properties consist of small, one and two bedroom apartment buildings generally marketed as low to moderate income rental housing.

"On May 29, 2012, SA sold its interest in the Seymour Street properties to Park Broad Investments, LLC (PBI), for one dollar. . . . Section 9.1 (g) of the May 29th agreement between SA and PBI includes a reference to assigned contracts included in 'Exhibit 6.2' to the contract, but no such exhibit was entered into evidence. On May 29, 2012, PSAP sold its interest in the Squire/Park Street properties to PBI. . . . On September 4, 2014, PSAP quitclaimed its interest in the Squire/Park Street properties to Squire. . . . On March 13, 2014,

unpleaded claim, like their principal claim on appeal, is unreviewable because the record is inadequate, as discussed further in this opinion.

SA quitclaimed its interest in the Seymour Street properties to Seymour. . . . At the time Seymour and Squire acquired ownership of the subject properties, the subject properties were in need of substantial repair and had significant back taxes owed to [the city]. Seymour and Squire paid the back taxes . . . and invested substantial amounts of money, $400,000 to $600,000, according to [Carlos] Valinho, [the sole member of both Seymour and Squire], to improve the condition of the subject properties. Generally, the subject properties are now successfully rented to tenants by Seymour and Squire.

"On June 27, 2013, Yasha Escalera, Director of [the city's] Housing and Property Management Division, wrote to Veronica Curioso at Seymour stating that Seymour was required to comply with the terms of the 1997 abatement agreement (including reducing rents, improving the condition of the units, and renting units to low to moderate income individuals) and stating that the [1997] abatement agreement was subject to an annual review to ensure Seymour's compliance. . . . On March 18, 2014, Miriam Rodriguez of [the city's] Housing Division wrote to [Valinho] thanking him for his 'renewal application' for tax abatements on the Seymour Street properties and stating that the tax abatements had expired at the end of grand list year 2012. . . . On August 18, 2015, Kiana Gamble at [the city's] Assessment and Collection Division wrote to [Valinho] and informed him that the tax abatement on the Seymour Street properties for the 2014 grand list would be $72,093.74. . . .

"In calendar year 2016, Seymour and Squire began to have difficulty getting tax abatements on the subject properties for grand list year 2015. . . . On May 26, 2017, [Valinho] wrote to Sean Fitzpatrick at the [city] inquiring as to why abatements on the subject properties were not being approved. . . . In his May 26 letter,

[Valinho] asserts that tax abatement 'renewals' had been approved for the subject properties and speculates that the possible reason for [the city's] delay in approving further abatements was that 'the city can't locate certain documents and therefore we need to pay the full tax amount.' . . . Valinho claims that Seymour and Squire are owed tax abatements on the subject properties for grand list years 2015, 2016, and 2017 in accordance with the 1997 and 2003 abatement agreements." (Citations omitted; footnote omitted.)

The court, *Budzik, J.*, held a trial on May 11, 2023. Valinho testified, and eleven exhibits were entered into evidence. The court also reviewed stipulations of facts. On November 2, 2023, the court issued a memorandum of decision. The court stated that "Valinho testified at trial that he was assured by [city] officials that [the city] would honor the 1997 and 2003 abatement agreements originally signed with SA and PSAP and that [the city] would provide tax abatement on the subject properties through grand list year 2017." The trial court credited Valinho's testimony only to the extent that it concluded that "Valinho had some communications with [city officials] regarding tax abatements for the subject properties." The court further concluded that "Valinho, Seymour, and Squire failed to present any credible evidence as to exactly what those discussions were, what agreements, if any, were reached, and whether the persons [Valinho] was dealing with had any authority, real or apparent, to legally bind" the city. The court stated that "Valinho also testified that he would not have purchased the subject properties without an assurance from the [city] that it would honor the 1997 and 2003 abatement agreements through grand list year 2017. The court does not credit [Valinho's] testimony on this point."

The court stated that "[§] 32-12 (b) (9) of the Hartford Code of Ordinances requires . . . all tax abatement agreements to be approved by the city council. . . .

No copy of a tax abatement agreement between Seymour and/or Squire and the [city] was entered into evidence at trial. Indeed [Valinho] did not testify that he recalled signing such an agreement." (Citations omitted.) Finally, the court noted the city's policy that "[a]ll tax abatement agreements are non-transferable and non-assignable without [the] written consent of the [m]ayor of the [city]." (Internal quotation marks omitted.) The court stated that "[t]here was no evidence presented at trial that the mayor . . . ever provided written consent to transfer or assign any rights under any abatement agreement to Seymour or Squire."

On the basis of these facts, the court concluded that "both Seymour and Squire have failed to present sufficient facts to prove, by a preponderance of the evidence, that there was any tax abatement agreement between Seymour and/or Squire and the [city] that covered the grand list years at issue, 2015–2017." The court first noted that there was no credible evidence presented at trial showing any tax abatement agreement that was "approved by the . . . city council or entered into by a person with authority to bind" the city. The court stated that Valinho's testimony "as to assurances or discussions with [city] employees with respect to tax abatement on the subject properties were much too inchoate and vague for the court to conclude that any kind of binding agreement was entered into . . . ." The court noted that Valinho "could not even say with clarity with whom at the [city] he claims to have made a contract."

Second, the court determined that "there was no credible evidence introduced at trial demonstrating that SA's or PSAP's rights under the 1997 and/or 2003 abatement agreements were transferred or assigned to Seymour or Squire and no written consent from the mayor . . . to any such transfer or assignment was entered into evidence. Indeed, the 1997 abatement agreement

had an express term of fifteen years and thus any rights PSAP (or any successor) had under that agreement ended in 2012." Third, the court stated that, although Escalera's June, 2013 letter "provides sufficient evidence that, for unknown reasons, [the city] decided to give Seymour the benefit of the 1997 abatement agreement for the 2014 grand list year, there is no evidence that that decision automatically extended to grand list years 2015–2017, or that [Escalera] (who did not testify at trial) had any authority to create an enforceable, contractual obligation for [the city] to provide tax abatement to Seymour and/or Squire for grand list years 2015–2017." The court also noted that Escalera's letter made clear that Seymour was required to comply with other terms and that any abatement would be subject to annual review. Accordingly, the court stated that, even if it were to conclude that Escalera had authority to bind the city, which it did not so conclude, Seymour had presented no credible evidence that it complied with the terms of Escalera's letter. Accordingly, the court rendered judgments in favor of the defendants. This appeal followed.

On appeal, the plaintiffs claim that the court's finding that there were no tax abatement agreements between the parties was clearly erroneous.[3] We decline to reach the merits of this claim because the plaintiffs have failed to provide an adequate record for review.

"Factual findings are subject to a clearly erroneous standard of review. . . . It is well established that [a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support

---

[3] Although the plaintiffs did not include a standard of review in their appellate brief, the plaintiffs' counsel, during oral argument before this court, identified the clearly erroneous standard of review as applicable to the plaintiffs' claim.

it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Meineke Bristol, LLC* v. *Premier Auto, LLC*, 227 Conn. App. 64, 72–73, 319 A.3d 826 (2024).

"As the appellant, the [plaintiff] has the burden of providing this court with a record from which this court can review any alleged claims of error." (Internal quotation marks omitted.) *J. M.* v. *E. M.*, 216 Conn. App. 814, 821, 286 A.3d 929 (2022). Practice Book § 61-10 (a) provides: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire record is complete, correct and otherwise perfected for presentation on appeal." "The general purpose of [the relevant] rules of practice . . . [requiring the appellant to provide a sufficient record] is to ensure that there is a trial court record that is adequate for an informed appellate review of the various claims presented by the parties. . . . It is not an appropriate function of this court, when presented with an inadequate record, to speculate as to the reasoning of the trial court or to presume error from a silent record." (Internal quotation marks omitted.) *Meineke Bristol, LLC* v. *Premier Auto, LLC*, supra, 227 Conn. App. 73.

In the present case, on December 1, 2023, the plaintiffs, through their counsel, filed with the Office of the

Appellate Clerk a certificate regarding transcripts indicating that, pursuant to Practice Book § 63-4 (a) (3), no transcripts were necessary for the resolution of this appeal. Despite making this certification, the plaintiffs, in their appellate briefing, rely on Valinho's testimony in support of their claim that the trial court's finding that there were no agreements between the parties was clearly erroneous. Specifically, they argue that Valinho's "uncontroverted testimony" at trial verifies his alleged discussions held with city representatives.[4] The plaintiffs' failure to provide this court with transcripts of the trial renders impossible any meaningful evaluation of the entirety of the evidence presented to the court. See *Meineke Bristol, LLC* v. *Premier Auto, LLC*, supra, 227 Conn. App. 74–75 ("In connection with a claim that requires this court to review the evidence presented at trial . . . we must consider the evidence as a whole, including evidence of a testimonial nature. In the absence of a complete transcript, we would have to resort to speculation to resolve [the appellant's] claim that the court erred in determining that it failed to prove its breach of contract cause of action."); *J. M.* v. *E. M.*, supra, 216 Conn. App. 822 ("[i]n the absence of the

---

[4] In their appellate brief, the plaintiffs rely on the testimony at trial as follows: "Pursuant to the uncontroverted testimony of [Valinho] at trial, before [Squire] purchased the [Squire/Park Street] properties, he held numerous discussions with representatives of the [city], including [Escalera], [the city's] Director of Housing and Property Management at the time. During those discussions, the parties agreed that should [Squire] purchase the [Squire/Park Street] properties and pay the outstanding property tax arrearage on the properties which were amassed by a prior owner of the [Squire/Park Street] properties, the [city] would agree to a new ten year abatement agreement. [Squire] purchased the [Squire/Park Street] properties and satisfied the outstanding tax arrearage. The defendants put forth no evidence at trial to controvert these facts. [Squire] and the defendants had a meeting of the minds and exchanged documents that evidenced offer and acceptance of the renewed tax agreements. [Squire] and the [city] therefore entered into a new abatement agreement for the [Squire/Park Street] properties." The plaintiffs similarly rely on Valinho's testimony in their argument with respect to Seymour and the Seymour Street properties.

transcript, we are left to speculate as to whether the court's findings are clearly erroneous, which we cannot do"); *Margarum* v. *Donut Delight, Inc.*, 210 Conn. App. 576, 579, 270 A.3d 169 (2022) (failure to provide transcripts of evidentiary portion of trial proceedings rendered impossible review of appellate claim challenging jury's factual finding).

"As we have repeatedly stated, [o]ur role is not to guess at possibilities, but to review claims based on a complete factual record  .  .  .  ." (Internal quotation marks omitted.) *Margarum* v. *Donut Delight, Inc.*, supra, 210 Conn. App. 580. Accordingly, we are unable to address the merits of the plaintiffs' claim because they have not provided this court with an adequate record for review.

The judgments are affirmed.

In this opinion the other judges concurred.